**Mario CUOMO, Governor of the State of New York; Thomas A. Coughlin, Commissioner of the New York State Department of Correctional Services; and Paul Russi, Chairman of the New York State Division of Parole, Plaintiffs,**

v.

**William BARR, Attorney General of the United States of America; Eugene McNary, Commissioner of Immigration and Naturalization Service; Stanley McKinley, Director of the INS Eastern Regional Office;[1] William Slattery, INS Director for the New York District; and Jack Ingram, INS Director for the Buffalo, NY District,[2] Defendants.**

No. 92–CV–543.

United States District Court, N.D. New York.

Feb. 9, 1993.

---

1. The defendants, in their Answer, disclose that Mr. McKinley's title is Regional Administrator of INS's Eastern Regional Office.

2. The defendants, in their Answer, disclose that the proper name for the INS Director, Buffalo, is not Jack Ingram but John Ingham.

Robert Abrams, Atty. Gen. by Judith T. Kramer, Asst. Atty. Gen., New York City, for plaintiffs.

William Barr, Atty. Gen. of U.S., by William Howard, Washington, DC, for defendants.

## MEMORANDUM–DECISION AND ORDER

SCULLIN, District Judge.

### Background

This lawsuit was commenced by the filing of a Complaint by the plaintiffs on April 27, 1992. The defendants filed their Answer to that Complaint on June 26, 1992. That same day, June 26, 1992, the plaintiffs filed the instant motion for summary judgment, to which the defendants cross moved for summary judgment on August 14, 1992. All parties have fully briefed the issues here presented. Oral argument was presented to the court in Albany, New York on August 28, 1992, following which a predecision conference was held in Syracuse, New York on October 30, 1992.

This litigation was commenced by the State of New York seeking declaratory, injunctive and mandamus relief for what it perceives to be violations of federal statutes by the Immigration & Naturalization Service (INS) vis-a-vis its obligation with respect to alien prisoners. The plaintiffs, in asserting seven separate claims, challenge the policies and practices of the defendants under sections 242(a)(2)(A), 242(a)(2)(B) and 242(a)(3)(A)(i) of the Immigration and Nationality Act [hereinafter referred to as "the Act"], 8 U.S.C. §§ 1252(a)(2)(A), 1252(a)(2)(B) & 1252(a)(3)(A)(i).[3] In essence, the plaintiffs claim that the defendants, being obligated under 8 U.S.C. § 1252(a) to take and retain custody of alien prisoners released by the New York State Department of Corrections, have failed to do so, that the defendants have failed to implement an information system for the identification of aliens as required by section 1252(a)(3)(A) and that this conduct is arbitrary, capricious, an abuse of discretion not in accordance with law and in violation of the Administrative Procedure Act, 5 U.S.C. § 706(1) & (2)(A) & (C).

Specifically, the plaintiffs claims (numbered as they are in the Complaint) are:

1) the defendants have violated 8 U.S.C. § 1252(a)(2)(A) by failing to take custody of aliens convicted of aggravated felonies who are on conditional parole for deportation only, *see* Complaint at ¶¶ 65–66;

2) the defendants have violated 8 U.S.C. § 1252(a)(2)(A) by failing to take custody of aliens convicted of aggravated felonies who are released on parole or supervised release, *see id.* at ¶¶ 67–68;

3) the defendants have violated 8 U.S.C. § 1252(a)(2)(A) by failing to take into custody all illegal aliens listed in the demand letter, *see id.* at ¶¶ 69–70;

---

**3.** Section 1252(a)(2)(A) reads in pertinent part as follows:

"The Attorney General shall take into custody any alien convicted of an aggravated felony upon release of the alien (regardless of whether or not such release is on parole, supervised release, or probation, and regardless of the possibility of rearrest or further confinement in respect of the same offense). Notwithstanding paragraph (1) or subsections (c) and (d) of this section but subject to subparagraph (B), the Attorney General shall not release such felon from custody."

Section 1252(a)(2)(B) reads in pertinent part as follows:

"The Attorney General may not release from custody any lawfully admitted alien who has been convicted of an aggravated felony, either before or after a determination of deportability, unless the alien demonstrates to the satisfaction of the Attorney General that such alien is not a threat to the community and that the alien is likely to appear before any scheduled hearings."

Section 1252(a)(3)(A)(i) reads in pertinent part as follows:

"The Attorney General shall devise and implement a system—(i) to make available, daily (on a 24–hour basis), to Federal, State, and local authorities the investigative resources of the Service to determine whether individuals arrested by such authorities for aggravated felonies are aliens."

4) the defendants have violated 8 U.S.C. § 1252(a)(2)(A) by failing to retain custody of illegal aliens convicted of aggravated felonies and on parole, *see id.* at ¶¶ 71–72;

5) the defendants violated 8 U.S.C. § 1252(a)(3)(A) by failing to implement a system to assist the plaintiffs in identifying aliens convicted of aggravated felonies, *see id.* at ¶¶ 72–74;

6) the defendants' failure to take aliens and to retain illegal aliens who have been convicted of aggravated felonies upon their release on parole or supervised release is arbitrary, capricious, an abuse of discretion not in accordance with law and in violation of the Administrative Procedure Act, 5 U.S.C. § 706(1) & (2)(A) & (C), *see id.* at ¶¶ 75–76; and

7) the defendants' failure to implement an information system to assist the plaintiffs in identifying aliens convicted of aggravated felonies is arbitrary, capricious, an abuse of discretion not in accordance with law and in violation of the Administrative Procedure Act, 5 U.S.C. § 706(1) & (2)(A) & (C), *see id.* at ¶¶ 77–78.

### Discussion

■■ The standard of review for a summary judgment motion, while easy to state, is generally quite difficult to apply: A motion for summary judgment must be granted where there exists no genuine issue of material fact. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265, 273 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211 (1986). It has been held that a material fact is one which affects the outcome of the litigation. *Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976). Inasmuch as both parties have moved for summary judgment, it may well be that there are no genuine issues of material fact and, thus, the litigation would be a pure question of law for this court to decide. *See Cargill, Inc. v. Charles Kowsky Resources, Inc.,* 949 F.2d 51, 55 (2d Cir.1991); *Eastman Mach. Co., Inc. v. United States,* 841 F.2d 469, 473 (2d Cir.1988); *Bank of Am. Nat'l Trust & Sav. Ass'n v. Gillaizeau,* 766 F.2d 709, 716 (2d Cir.1985); *Benson v. RMJ Securities Corp.,* 683 F.Supp. 359, 365 (S.D.N.Y.1988). However, that is not necessarily the case, and the court must evaluate each side's motion on its own merits, in each instance drawing all inferences in favor of the nonmoving party. *Schwabenbauer v. Board of Educ. of City School Dist. of City of Olean,* 667 F.2d 305, 313–14 (2d Cir.1981).

Rather than discuss each cause of action, the court will rather address the issues presented by the parties in their motions for summary judgment.

### I. Parole for Deportation Only

■ Section 1252(a)(2)(A) provides that the Attorney General must take into his custody all alien prisoners who have been convicted of aggravated felonies upon their release from State correctional facilities. The statute continues parenthetically to provide that the Attorney General shall, irrespective of the possibility of rearrest for further confinement for the same offense, take custody of these prisoners, regardless of whether the release is to "parole," "supervised release," or "probation."

New York State has a statute that allows for "conditional parole for deportation only" which the plaintiffs contend falls within the meaning of "parole" as Congress intended that term. With this the defendants take issue.

Conditional Parole for Deportation Only [hereinafter referred to as "CPDO"] is provided for in section 259–i(2)(d)(i) of the New York Executive Law, which reads in pertinent part as follows:

"[A]fter an inmate has served his minimum period of imprisonment imposed by the court, if the inmate is subject to deportation by the United States Immigration and Naturalization Service, in addition to the criteria set forth in paragraph (c), the [parole] board may consider, as a factor warranting earlier release, the fact that such inmate will be deported, and may grant parole to such inmate

conditioned specifically on his prompt deportation. The board may make such conditional grant of early parole only where it has received from the United States Immigration and Naturalization Service assurance (A) that an order of deportation will be executed or that proceedings will promptly be commenced for the purpose of the deportation upon release of the inmate from the custody of the department of correctional services, and (B) that the inmate, if granted parole pursuant to this paragraph, will not be released from the custody of the United States Immigration and Naturalization Service, unless such release be as a result of deportation without providing the board a reasonable opportunity to arrange for the execution of its warrant for the retaking of such parolee."

(McKinney Supp.1992).

The defendants contend that this CPDO program is not a release pursuant to "parole" as that term is used in section 1252(a)(2)(A), but that it is merely a transfer of custody. The plaintiffs assert that it is a release since it is a variety of "parole" and thus, the INS has an obligation to take custody of these alien prisoners when they are granted status as a CPDO.[4]

The Act itself does not make any distinction between types of parole. It merely uses the term "parole."

As can be seen, CPDO is a special variety of parole. While the inmate may be otherwise eligible for parole release inasmuch as he has completed the minimum period of imprisonment, *see* N.Y. Exec. Law § 259–i(2)(c) (McKinney Supp.1992), he is not being released pursuant to the statutory provisions applicable thereto, but rather is to be "paroled" only to the custody of the INS. If the INS releases him, which by virtue of section 1252(a)(2)(B), they may do if the prisoner is a "lawfully admitted

alien," then he is not released to ordinary parole supervision under the auspices of the New York State Division of Parole. Rather, he is returned to the Department of Correctional Services [hereinafter referred to as "DOCS"] facility, where he may be considered for so-called ordinary parole, or held for the full term of his maximum period of court-imposed incarceration.

While it may be true that a prisoner being paroled "CPDO" is not granted that status until after he has completed his minimum period of court-imposed incarceration, as is the case with ordinary parole, it is nevertheless also true that this alien prisoner is not released to ordinary parole supervision with the Division of Parole, but is transferred to the custody of INS. Whether this is due to the fact that the alien prisoner is determined to be ineligible for ordinary parole or whether it is due to the existence of this special category of parole, the fact remains that the prisoner is not to be released from a DOCS facility absent the INS taking custody of him. In the opinion of the court, this is a key distinction that differentiates CPDO from the "parole" envisioned by Congress in inserting this term in the statute. Thus, the court finds that plaintiffs transfer of custody of the alien prisoners, pursuant to a determination that they are eligible for CPDO status, does not amount to a release of the alien prisoners as that term is used in § 1252(a)(2)(A).

Therefore, the plaintiffs' motion for summary judgment with respect to this issue is DENIED and the defendants' cross motion for summary judgment is GRANTED.[5]

## II. "Supervised Release," as that term is used in § 1252(a)(2)(A)

Next, the court must resolve the meaning of the term "supervised release," as that term is used in section 1252(a)(2)(A).

---

**4.** The plaintiffs also contend that the defendants must retain custody of these CPDOs once they have been taken into INS custody. That issue will be discussed *infra*.

**5.** Inasmuch as the INS is already taking custody of the CPDOs from the New York District, *see* McElroy Declaration at ¶ 7, and the Buffalo District will take custody of CPDOs so long as

they can obtain the requisite travel documents, the issue would seem somewhat moot. While the INS, given the meaning of section 1252(a)(2)(A)'s term "parole," is not required to take custody of these CPDOs, it is in fact doing so. As such, the plaintiffs cannot now be heard to complain.

As stated above, section 1252(a)(2)(A) includes within the categories of release "supervised release." As such, the Attorney General is required to take into his custody all aliens having committed aggravated felonies who are released from a correctional facility to supervised release.

The plaintiffs assert that the defendants are violating the statute in that they refuse to take into custody those aliens convicted of aggravated felonies who are placed in various programs which they label supervised release, to include *inter alia* work release and day reporting. The defendants contend that the term "supervised release" is intended to describe only that program envisioned by 18 U.S.C. § 3583, the federal supervised release statute. As authority for this contention, the defendants cite the court to the United States Supreme Court decision in *Gozlon–Peretz v. United States,* 498 U.S. 395, 111 S.Ct. 840, 112 L.Ed.2d 919 (1991).

The defendants contend that there is a critical distinction between federal "supervised release" and those programs that the plaintiffs argue are within the meaning of that term. The former is specifically imposed by the sentencing judge and is a part of the sentence that is to take effect upon completion of period of incarceration, whereas the State programs are administratively granted by DOCS and can take effect prior to completion of the incarceratory portion of the sentence.

As was the term "parole", the term "supervised release" was added to section 1252(a)(2)(A) in 1990. Immigration Act of 1990, Pub.L. No. 101–649, Tit. V, §§ 504(a), 104 Stat. 5049 (1990). While the statute is silent as to the precise meaning of the term "supervised release," this term was added to the statute long after the Sentencing Guidelines' supervised release program became effective. Sentencing Reform Act, Pub.L. 98–473, Tit. II, ch. II, 98 Stat. 1987 (1984), *as amended by,* Sentencing Reform Amendments Act of 1985, Pub.L. No. 99–217, § 4, 99 Stat. 1728 (1985). The Sentencing Reform Act did not specifically define the term "supervised release." Section 3583 of title 18 does explain when and how

it is to be applied. Subsection (a) of section 3583 allows the court to "include *as a part of the sentence* a requirement that the defendant be placed on a term of supervised release *after imprisonment....*" The court must include supervised release in a defendant's sentence if it is required by the statute under which he/she is convicted, but may do so in all other cases.

Since the term "supervised release" in section 1252(a)(2)(A) was adopted after Congress used that term in the Sentencing Guidelines, the defendants' contention seems more persuasive. The court therefore agrees with defendants that the release programs which the plaintiffs are asserting cannot be characterized as "supervised release," as that term is used in section 1252(a)(2)(A).

Thus, on the basis of this challenge, the plaintiffs' motion for summary judgment with respect to this issue is hereby DENIED and the defendants' cross motion for summary judgment is hereby GRANTED.

*III. "Aggravated Felony," as that term is used in § 1252(a)(2)(A)*

■ The court must also resolve the meaning of "aggravated felony" as that term is used in section 1252(a)(2)(A).

While section 1252 does not define the meaning of this term, the term is defined in another federal statute, 8 U.S.C. § 1101(a)(43). That section reads as follows:

"The term 'aggravated felony' means murder, any illicit trafficking in any controlled substance (as defined in section 802 of Title 21), including any drug trafficking crime as defined in section 924(c)(2) of Title 18, or any illicit trafficking in any firearms or destructive devices as defined in section 921 of such title, any offense described in section 1956 of Title 18 (relating to laundering of monetary instruments) or any crime of violence (as defined in section 16 of Title 18, not including a purely political offense) for which the term of imprisonment imposed (regardless of any suspension of such imprisonment) is at least 5 years, or any attempt or conspiracy to commit any

such act. Such term applies to offenses described in the previous sentence whether in violation of Federal or State law...."

(emphasis added).

In turn, section 16 of title 18 defines a "crime of violence" as:

"(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."

Section 1101(a)(43)—the definition of aggravated felony—was added in 1989. Anti–Drug Abuse Act of 1988, Pub.L. No. 100–690, § 7342, 102 Stat. 4469–70 (1989). The provision was then amended in 1990. With this amendment, Congress included illicit trafficking in controlled substances, offenses described in section 1956 of Title 18, certain offenses defined in section 16 of Title 18 and crimes of violence. Congress, in amending the provision, also specified that the term "aggravated felony" was applicable whether the crime was committed in violation of State, Federal or foreign law. Immigration Act of 1990, Pub.L. No. 101–649, Tit. V, subtit. A, § 501(a), 104 Stat. 5048 (1990).

The issue here is the effective date of the provision, particularly as it relates to state crimes. Congress spoke to this in section 501(b) of Public Law 101–649, which provides that:

"The amendments made by subsection (a) [amending subsec. (a)(43) of this section] shall apply to offenses committed on or after the date of the enactment of this Act [November 29, 1990], except that the amendments made by paragraphs (2) [inserting reference to section 802 of Title 21] and (5) [providing that such term applies to offenses whether in violation of Federal or State law] of subsection (a) shall be effective as if included in the enactment of section 7342 of the Anti–Drug Abuse Act of 1988 [section 7342 of Pub.L. 100–690, approved November 18, 1988]."

104 Stat. 5048 (1990) (emphasis added).

A careful reading of this provision reveals that for purposes of section 1252(a)(2)(A) with respect to state court convictions, the term "aggravated felony" is meant to include all persons convicted of aggravated felonies which were committed on or after November 18, 1988.[6] *Cf. Ayala–Chavez v. I.N.S.*, 945 F.2d 288 (9th Cir. 1991).[7]

Thus, the court finds that in order to qualify as an aggravated felon under 1252(a)(2)(A), the alien inmate would have to have been convicted of having committed one of the following offenses on or after November 18, 1988:

1) murder;

2) illicit trafficking in any controlled substance;

3) illicit trafficking in any firearms;

4) a crime of violence (as that term is defined at 18 U.S.C. § 16) for which the term of imprisonment imposed is at least 5 years; or

5) any attempt or conspiracy to commit any such act.

---

**6.** The plaintiffs, in conjunction with a demand letter which they served on the defendants, created a list of felonies that they claim fall within the definition of "aggravated felony" as intended by section 1252(a)(2)(A) with .respect to alien prisoners. *See* Exhibit A annexed to Complaint. While that list may be accurate in the abstract, that does not necessarily mean that all alien inmates convicted of such felonies are "aggravated felons" within the definition of that term. This is so because in order to fall within that category, the felony must have been committed on or after November 18, 1988.

**7.** This decision has been found to be implicitly overruled by Congress when it enacted the Miscellaneous and Technical Immigration and Naturalization Amendments of 1991, Pub.L. 102–232 (Dec. 12, 1991), which amended the Immigration Act of 1990, Pub.L. No. 101–649 (Nov. 29, 1990). *Arthurs v. I.N.S.*, 959 F.2d 142, 143 (9th Cir.1992). These decisions were concerned, however, with the impact of the definition of "aggravated felon" on the Immigration Act's provisions relative to an automatic stay of deportation proceedings for an aggravated felon, not with section 1252(a)(2)(A).

■ The plaintiffs, both in their Complaint and in their motion for summary judgment allege that the defendants have violated the provisions of the Act relative to taking custody of aliens convicted of aggravated felonies. In support of this position, they cite as examples a list of alien inmates who they allege met the criteria under 1252(a)(2)(A) and were either not taken into INS custody at all or who were taken into INS custody in an untimely manner after appropriate notification. The court finds these factual allegations to be material. Because they cannot be resolved at this stage of the proceedings, both the plaintiffs' and the defendants' motions for summary judgment on the basis as it relates to those specific individuals must be DENIED.

### V. § 1252(a)(2)(B)'s Mandate to Retain Custody of Alien Aggravated Felons

■ The plaintiffs contend that the defendants have violated the mandates of section 1252(a)(2)(B) in that they have failed to retain in their custody aliens they originally took into their custody pursuant to the provisions of section 1252(a)(2)(A). As a result, the plaintiffs have been required to either reincarcerate them in DOCS facilities or to expend Division of Parole resources for their supervision. The defendants, in response, correctly state that they are only required to retain in their custody those aliens who were not lawfully admitted and those who were lawfully admitted but who cannot demonstrate that they are entitled to release pursuant to 1252(a)(2)(B). They further contend that they have not released any individual whom they were required by statute to retain in their custody.

However, inasmuch as there is a genuine issue of material fact as to whether the defendants failed to retain aliens in compliance with the statutory requirement, both the plaintiffs' and defendants' motion for summary judgment in this regard is hereby DENIED.

### V. Implementation of a Daily, 24-hour Information System

■ The defendants concede that they have not set up the information system as required in section 1252(a)(3)(A)(i). They state that they have failed to do so, however, due to the lack of Congressional appropriation for such a system. *See* Defendants' Memorandum of Law at 49. Additionally, the defendants argue that they have in fact fulfilled the intent of Congress in mandating the implementation of such a system in light of their efforts to provide information to DOCS through their regional liaisons at the various DOCS facilities. *See id.* at 53.[8]

While it may indeed be true that the defendants have failed to implement such an information system as is required by section 1252(a)(3)(A)(i), it nevertheless appears that there may have been some effort to facilitate the transfer of eligible aliens to INS custody and to expedite the deportation process, thereby alleviating the situation of alien inmates in the State correctional system. However, since there is exists a genuine issue of material fact with respect to this allegation, the plaintiffs' and the defendants' motions for summary judgment are hereby DENIED.

### VI. Administrative Procedure Act Claims (Sixth and Seventh Causes of Action)

■ In the sixth and seventh causes of action asserted by the plaintiffs, they contend that the defendants have violated the provisions of the Administrative Procedure Act. The contention that the defendants have violated the Administrative Procedure Act is directly related to the substantive arguments discussed above. In light of the fact that there have been found to be genu-

---

**8.** The defendants also contest the plaintiffs standing to make the charge that they have violated this statute since the plaintiffs are not an "arresting agency" and are therefore not the entity that the statutory provision was intended to assist. The plaintiffs counter this argument by stating that they often work with the "arresting agency" on the alien issues and are thus impacted by the lack of information, a lack which they contend would not exist if the information system were instituted.

ine issues of material fact relative to the issues of:

1) whether the defendants have failed to implement the section 1252(a)(3)(A)(i) information system;

2) whether the defendants have failed to take custody of aliens convicted of aggravated felonies; and

3) whether the defendants have failed to retain custody of all such aliens once taken into INS custody.

It follows that genuine issues of material fact exist as to whether the defendants have violated the Administrative Procedure Act, 5 U.S.C. § 706(1) & (2)(A) & (C). As such, the plaintiffs' and defendants' motion for summary judgment is, in this regard, DENIED.

### Conclusions

The plaintiffs' motion for summary judgment is DENIED in its entirety in that there are found to be genuine issues of material fact relative to the allegation that the defendants have failed to take custody of all aliens convicted of aggravated felonies as required by section 1252(a)(2)(A), relative to the allegation that the defendants have failed to retain custody of all such alien aggravated felons as required by section 1252(a)(2)(B), relative to the allegation that the defendants have failed to implement a daily, 24–hour information system as required by section 1252(a)(3)(A)(i) and relative to the allegations that the defendants have violated the Administrative Procedure Act in so doing. The defendants' cross motion for summary judgment is granted insofar as it relates to the determination that the plaintiffs' temporary release programs to include work release and day reporting are not within the meaning of "supervised release" as that term is used in section 1252(a)(2)(A) and insofar as it relates to the determination that the plaintiffs' Conditional Parole for Deportation Only is not within the meaning of "parole" as that term is used in section 1252(a)(2)(A).

As a result of these determinations, the following constitutes a summary of the status of the seven causes of action:

number 1: dismissed in its entirety

number 2: dismissed insofar as it refers to supervised release

number 3: remains intact

number 4: remains intact

number 5: remains intact

number 6: remains intact

number 7: remains intact

IT IS SO ORDERED.