Mario CUOMO, Governor of the State of New York; Thomas A. Coughlin, Commissioner of the New York State Department of Correctional Services; Raul Russi, Chairman of the New York State Division of Parole, Plaintiffs–Appellants,

v.

William P. BARR, Attorney General of the United States; Eugene McNary, Commissioner of the Immigration and Naturalization Service; Stanley McKinley, Director of the INS Eastern Regional Office; William Slattery, INS Director of the New York District, and John Ingham, INS Director for the Buffalo, New York District, Defendants–Appellees.

No. 1880, Docket 93–6096.

United States Court of Appeals, Second Circuit.

Argued Aug. 10, 1993.

Decided Sept. 29, 1993.

Judith T. Kramer, Asst. Atty. Gen., New York City (Robert Abrams, Atty. Gen. of the State of N.Y., of counsel), for plaintiffs-appellants.

William J. Howard, U.S. Dept. of Justice, Washington, DC (Stuart E. Schiffer and David J. Kline, Dept. of Justice, of counsel), for defendants-appellees.

Before: WINTER, MINER and WALKER, Circuit Judges.

WINTER, Circuit Judge:

Mario Cuomo, Governor of New York, and other state officials (collectively "New York") appeal from Judge Scullin's decision granting partial summary judgment to defendants-appellees, the United States Attorney General and officials of the Immigration and Naturalization Service ("INS"). New York's complaint charged INS with various violations of Section 242(a) of the Immigration and Nationality Act, 8 U.S.C. § 1252, and the Administrative Procedure Act, 5 U.S.C. § 706, and sought declaratory, injunctive, and mandamus relief. The parties cross-moved for summary judgment on all seven claims in the complaint. The district court awarded summary judgment to INS as to New York's claims based on 8 U.S.C. § 1252(a)(2)(A) that INS must take custody of aliens convicted of aggravated felonies on various "release" programs or on "Conditional Parole for Deportation Only." *Cuomo v. Barr*, 812 F.Supp. 324, 327–29 (N.D.N.Y.1993). The district court denied the cross-motions on all other claims. New York now appeals from the grant of partial summary judgment. We dismiss for lack of appellate jurisdiction.

## BACKGROUND

New York houses many illegal aliens in its prison system. As of March 1992, New York held approximately 60,000 prisoners in state correctional facilities, 8% of whom were known to be aliens and an additional 4% of whom were suspected to be aliens. Of this number, 6,096 had been convicted of aggravated felonies, making them subject to deportation, 8 U.S.C. § 1252(a), 2,731 of whom were then eligible for temporary release. New York alleges that the INS has illegally failed to take custody of those aliens who are in various release programs.

### A. *Federal Immigration Law*

The merits of this appeal concern the interpretation of the phrase "release of the alien," 8 U.S.C. § 1252(a)(2)(A), in deciding whether various levels of state penal supervision trigger mandatory assumption of custody by INS. The current Section 1252(a)(2)(A), part of the Immigration Act of 1990, § 504, Pub.L. No. 101–649, 104 Stat. 4978, 5049, amended Section 242(a)(2)(A) of the Immigration and Nationality Act. Prior to the amendment, this section read: "[INS] shall take into custody any alien convicted of an aggravated felony upon completion of the alien's sentence for such conviction." After the amendment, it read:

> [INS] shall take into custody any alien convicted of an aggravated felony upon release of the alien (regardless of whether or not such release is on parole, supervised release, or probation, and regardless of the possibility of rearrest or further confinement in respect of the same offense).

The term "release" is not defined except as to include "parole," "supervised release," and "probation," terms that themselves are not defined in the Act. The term "supervised release" does appear, however, in the Sentencing Reform Act of 1984, codified at 18 U.S.C. § 3583, describing it as "part of the sentence." 18 U.S.C. § 3583(a). This "supervised release" replaced the "special parole" which was " 'a period of supervision served upon completion of a prison term.' " *Gozlon–Peretz v. United States*, 498 U.S. 395, 399, 111 S.Ct. 840, 844, 112 L.Ed.2d 919 (1991) (quoting *Bifulco v. United States*, 447 U.S. 381, 388, 100 S.Ct. 2247, 2253, 65 L.Ed.2d 205 (1980)). Under the federal "supervised release" program, the sentencing court, rather than the U.S. Parole Commission, sets the terms of postconfinement monitoring.

Federal law further provides that in addressing the cases of aliens convicted of offenses for which they are subject to deportation, INS "shall begin any deportation proceeding as expeditiously as possible after the date of the conviction." 8 U.S.C. § 1252(i).

### B. *New York State's Release Provisions*

New York law provides for several intermediate levels of continuing supervision of state prisoners between full-time incarceration in a state correctional facility and unencumbered release into the community. These include two types of work release and two types of treatment release programs. The "Conventional Work Release Program"

permits inmates to leave the prison during the day for employment, job training, or a job search, and to leave the prison entirely during the weekends. N.Y.Correct.L. §§ 851–855 (McKinney 1987). The "Five/ Two Work Release Program" allows inmates to leave the prison for the same reasons but extends the permitted period of absence to five days each week. *Id.* The "Conventional Residential Treatment Facility Program" allows inmates to leave the prison for drug addiction therapy, returning only three times a week for urinalysis. N.Y.Correct.L. §§ 70(2), 73 (McKinney 1987). The "CASAT Residential Treatment Facility Program" permits inmates to reside entirely outside the prison, with their only supervision coming through their treatment counselors and parole officers. N.Y. Correct.L. §§ 2(18), 73 (McKinney 1987 & Supp.1993). The district court held that as a matter of law the programs described above do not constitute "supervised release" for purposes of Section 1252(a)(2)(A). 812 F.Supp. at 329.

New York has also created a special category for deportable aliens permitting "Conditional Parole for Deportation Only" ("CPDO") for those who have completed their minimum sentences. N.Y.Exec.L. § 259–i(2)(d) (McKinney 1993). Under this provision, New York may

> make such conditional grant of early parole only where it has received from [INS] assurance (A) that an order of deportation will be executed or that proceedings will promptly be commenced for the purpose of deportation upon release of the inmate from the custody of the department of correctional services, and (B) that the inmate, if granted parole pursuant to this paragraph, will not be released from [INS] custody ... unless such release be as a result of deportation without providing the board a reasonable opportunity to arrange for execution of its warrant for the retaking of such parolee.

N.Y.Exec.L. § 259–i(2)(d)(i).

The district court held that as a matter of law CPDO does not constitute "release" for purposes of Section 1252(a)(2)(A).

## DISCUSSION

INS claims that New York's appeal is from a non-appealable interlocutory order. Title

28 U.S.C. § 1292(a)(1) grants us jurisdiction to hear appeals from orders of the district courts "granting, continuing, modifying, refusing or dissolving injunctions." INS argues that Judge Scullin's order granting it partial summary judgment does not meet the requirements of 28 U.S.C. § 1292(a)(1). We agree.

Where the denial of a permanent injunction is the result of a grant of partial summary judgment and there is no final judgment, we lack appellate jurisdiction unless the denial order "might have a 'serious, perhaps irreparable, consequence,'" and it "can be 'effectually challenged' only by immediate appeal." *Carson v. American Brands, Inc.,* 450 U.S. 79, 84, 101 S.Ct. 993, 996, 67 L.Ed.2d 59 (1981) (quoting *Baltimore Contractors, Inc. v. Bodinger,* 348 U.S. 176, 181, 75 S.Ct. 249, 252, 99 L.Ed. 233 (1955), *overruled on other grounds by Gulfstream Aerospace Corp. v. Mayacamas Corp.,* 485 U.S. 271, 108 S.Ct. 1133, 99 L.Ed.2d 296 (1988)); *see also Chappell & Co. v. Frankel,* 367 F.2d 197, 203–04 (2d Cir.1966) (in banc). Without a showing of serious consequences and the lack of an effective appeal, the policy against piecemeal appellate review embodied in the final judgment rule must prevail over the narrowly tailored exception of 28 U.S.C. § 1292(a)(1). *Western Geophysical Co. of Am., Inc. v. Bolt Assocs., Inc.,* 463 F.2d 101, 104 (2d Cir.), *cert. denied,* 409 U.S. 1040, 93 S.Ct. 523, 34 L.Ed.2d 489 (1972).

New York has demonstrated neither serious, let alone irreparable, consequences nor the unavailability of an effective appeal. Even under New York's expansive reading of Section 1252, a maximum of around 3% of the state's prison population qualifies for INS custody. In addition, New York's appellate remedies will remain fully intact following final judgment.

Moreover, New York's conduct and litigating positions also belie the urgent need for interlocutory review that it asserts. First, New York waited fifty-seven days to appeal from Judge Scullin's order granting INS partial summary judgment, three days short of the Fed.R.App.P. 4(a)(1) deadline. Second, New York did not seek and still has not sought a preliminary injunction under Fed.

20

R.Civ.P. 65(a). Although failure to seek preliminary injunctive relief below is not a *per se* bar to an appeal under Section 1292(a)(1), *Volvo N. Am. Corp. v. Men's Int'l Professional Tennis Council,* 839 F.2d 69, 75 (2d Cir.), *cert. denied,* 487 U.S. 1219, 108 S.Ct. 2872, 101 L.Ed.2d 908 (1988), that failure must be taken into account in assessing any claim of a "serious, perhaps irreparable, consequence" from the denial of injunctive relief. Third, New York did not move in the district court for a separate final judgment, pursuant to Fed.R.Civ.P. 54(b), as to those claims on which the district court granted summary judgment. Fourth, New York did not seek certification for an interlocutory appeal under 28 U.S.C. § 1292(b), pursuant to Fed. R.App.P. 5, and the time has now passed for such a request, Fed.R.App.P. 5(a). Finally, New York sought neither an expedited trial nor expedited review in this court.

For these reasons, New York has not made a persuasive showing of "serious, perhaps irreparable, consequences" "which will result from a failure to exercise appellate jurisdiction at this juncture, [or] which is likely to render ineffectual any relief that might result from an appeal from a final judgment in the litigation pending below." *Volvo N. Am. Corp.,* 839 F.2d at 76. We therefore dismiss the appeal.