# In re Neville George WEST, Respondent

## File A41 361 806 - Newark

*Decided as amended October 26, 2000*[1]

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

The mandatory detention provisions of section 236(c) of the Immigration and Nationality Act, 8 U.S.C. § 1226(c) (Supp. IV 1998), do not apply to an alien who was convicted after the expiration of the Transition Period Custody Rules ("Transition Rules"), but who was last released from the physical custody of state authorities prior to the expiration of the Transition Rules and who was not physically confined or restrained as a result of that conviction.

Robert Frank, Esquire, Newark, New Jersey, for respondent

Patrice M. Rodman, Assistant District Counsel, for the Immigration and Naturalization Service

Before: Board Panel: HEILMAN, FILPPU, and MOSCATO, Board Members.

FILPPU, Board Member:

In a bond decision dated August 30, 1999, an Immigration Judge determined that the respondent was not subject to mandatory detention under section 236(c) of the Immigration and Nationality Act, 8 U.S.C. § 1226(c) (Supp. IV 1998), granted the respondent's request for a change of custody status, and set bond in the amount of $5,000. The Immigration and Naturalization Service has appealed only from the Immigration Judge's finding that the respondent is not subject to mandatory detention under section 236(c) of the Act. The appeal will be dismissed.

## I. FACTS AND PROCEDURAL HISTORY

The facts in this bond appeal are not in dispute. On April 10, 1997, the respondent was arrested and charged with various offenses, including pos-

---

[1]On our own motion, we amend the July 28, 2000, order in this case. The amended order makes editorial changes consistent with our designation of the case as a precedent.

session of marijuana with intent to distribute in violation of section 2C:35-5(b)(11) of the New Jersey Statutes Annotated. He was indicted for these offenses on December 9, 1997, and, after posting bond, was released from state custody on December 10, 1997. On September 29, 1998, the respondent pled guilty to the drug charge and to a charge of receiving stolen property. On February 5, 1999, he was sentenced to 1 year of probation for each offense.

On August 12, 1999, the Service took the respondent into custody and served him with a Notice to Appear (Form I-862). The Service charged that, because of his drug conviction, the respondent was subject to removal under sections 237(a)(2)(A)(iii) and (B)(i) of the Act, 8 U.S.C. §§ 1227(a)(2)(A)(iii) and (B)(i) (Supp. IV 1998). The record before us indicates that the respondent was not in physical custody under New Jersey criminal proceedings at any time after he posted criminal bond on December 10, 1997.

## II. IMMIGRATION JUDGE'S DECISION

The Immigration Judge analyzed the language of section 236(c)(1) of the Act, which mandates the detention of certain categories of aliens "when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation" (the "when released" language). He further considered the last sentence of section 303(b)(2) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-586 ("IIRIRA"), which provides that the provisions of section 236(c) of the Act "shall apply to individuals released after" October 8, 1998, the date on which the Transition Period Custody Rules ("Transition Rules") expired (the "released after" language).

The Immigration Judge determined that the Service may take an alien into custody once he or she is free from physical restraint by the state. He concluded that the respondent was not subject to mandatory detention because he was free from physical restraint prior to the expiration of the Transition Rules when he posted bail following his arrest in December 1997. He ordered that bond be set in the amount of $5,000 after finding that the respondent did not pose a danger to property or persons and was unlikely to abscond.

## III. ANALYSIS

Although we agree with the Immigration Judge that the respondent is not subject to the mandatory detention provisions of section 236(c) of the Act because he was free from physical restraint prior to the expiration of the

Transition Rules, the focus of our analysis is substantially different, and we do not necessarily subscribe to the subsidiary points supporting his conclusion. However, the Immigration Judge applied the correct standard governing aliens subject to section 236(a) of the Act, and the Service has not appealed the amount of the bond. *See Matter of Adeniji*, 22 I&N Dec. 1102 (BIA 1999); 8 C.F.R. § 236.1(c)(8) (2000).

The Service proposes that the issue to be resolved in this case turns on the definition of the "when released" language of section 236(c) of the Act and asserts that, when the alien is not sentenced to imprisonment, the date of sentencing should be the date of "release" for the purpose of mandatory detention. As revealed by our analysis in *Matter of Adeniji*, *supra*, however, the initial issue to be resolved in this case is whether the respondent was "released after" the expiration of the Transition Rules on October 8, 1998, so as to trigger the mandatory detention provisions of section 236(c) of the Act.

We noted in *Matter of Adeniji*, *supra*, that the respondent, and subsequently the Service, contended that the "released after" language of section 303(b)(2) of the IIRIRA made section 236(c) of the Act applicable only to aliens released from criminal custody after the expiration of the Transition Rules. *Id.* at 1108. We commented that the natural sense of the words would seem to point in the direction advanced by the parties, but we found ambiguity in the term "released" because it "is not expressly tied to any other language that would clarify whether it refers to release from criminal custody, Service custody, or some other form of detention." *Id.* at 1108. We observed that "[t]he parties' proposed reading . . . extends mandatory detention only to aliens who have been released from criminal (and perhaps psychiatric and other nonService) confinement after the expiration of those rules." *Id.* We accepted the proposed reading of the last sentence of section 303(b)(2) of the IIRIRA and held that the respondent was not subject to mandatory detention under section 236(c) of the Act because "he was released from his nonService custodial setting (i.e., from criminal custody) prior to the expiration of the Transition Rules." *Id.* at 1111.

The respondent in *Matter of Adeniji* had been released from the state's custody, physical or otherwise, prior to the expiration of the Transition Rules, because he was convicted, incarcerated, and released from confinement while the Transition Rules were in effect. In this case, the respondent was also released from the physical custody of the state and convicted while the Transition Rules were in effect, but he was sentenced to probation after the expiration of the Transition Rules.

On appeal, the Service does not dispute that only aliens released after the expiration of the Transition Rules are subject to the mandatory detention provisions of section 236(c) of the Act. However, focusing its argument on the "when released" language of section 236(c), the Service asserts that if an alien is not sentenced to imprisonment, it is the date of "release" from the criminal proceeding itself, which occurs at the time of sentencing, that

triggers the application of the mandatory detention provisions. We assume that the Service would make essentially the same argument regarding the "released after" language of section 303(b)(2) of the IIRIRA. That is, the pertinent date for determining the applicability of section 236(c) of the Act is the date of release from the technical custody of the criminal court, and not the date of release from physical custody. Therefore, in order to decide this case, we must determine whether the word "released" in the "released after" language in the last sentence of section 303(b)(2) of the IIRIRA refers to the respondent's release from physical custody, or to his release from the jurisdiction of the New Jersey court at the time of sentencing.

In construing a statutory term, we must start with the language of the statute, and the word should be given its "'ordinary or natural'" meaning. *Bailey v. United States*, 516 U.S. 137, 145 (1995) (quoting *Smith v. United States*, 508 U.S. 223, 228 (1993)). "Release" is variously defined as "[t]o set free from confinement, restraint, or bondage," or "[t]o unfasten, free, or let go of." *Webster's II New College Dictionary* 936 (1995). We determined in *Matter of Adeniji*, *supra*, that the "released after" language refers to release from nonService custody. However, the language is ambiguous to the extent that it does not specify the type of nonService custody from which the alien is released. The Service contends that it is clear that the term "released" can have a meaning other than release from physical restraint.

A provision that can seem ambiguous in isolation is often clarified by examining how the same terminology is used elsewhere in the statutory scheme. *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 371 (1988). The words "release" or "released" are used several times in section 303 of the IIRIRA. Among the various provisions enacted by section 303 are those governing bond for aliens held by the Service pending completion of removal proceedings. The use of the term "release" in the provisions relating to the release of an alien on an immigration bond obviously refers to release of the alien from the physical custody of the Service. *See* sections 236(a)(2), (c)(2), (e) of the Act (as enacted by IIRIRA §§ 303(a), 110 Stat. at 3009-585; 303(b)(3)(B), 110 Stat. at 3009-587).

In addition, the word "released" in the "when released" language of section 236(c) and of the Transition Rules is modified by the subsequent clauses: "without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense." Section 236(c)(1) of the Act (as enacted by IIRIRA §§ 303(a), 110 Stat. at 3009-585; 303(b)(3)(A), 110 Stat. at 3009-587). "Parole" means the conditional release of a prisoner who has served part of the term for which he was sentenced to prison. *Black's Law Dictionary* 1116 (6th ed. 1990). "Probation" means a sentence "whereby a convicted criminal offender is released into the community under the supervision of a probation officer in lieu of incarceration." *Id.* at 1202. "Supervised release" under federal criminal law is a period of super-

vision following completion of a prison term. *See Cuomo v. Barr*, 7 F.3d 17, 18 (2d Cir. 1993). The natural reading of the words "released on" within the context of these clauses of section 236(c)(1) of the Act suggests that Congress is referring to the release of an alien from a restrictive form of criminal custody involving physical restraint to a less restrictive form of criminal custody without physical restraint. The reference in the last clause of the sentence to the possibility that the alien may be returned to a criminal custody status involving physical restraint (the "arrested or imprisoned again" language) buttresses this interpretation of the word "released."

The other use of the word "release" in section 303 of the IIRIRA is found in the section mandating that the Attorney General designate and train Service employees to serve as a liaison to law enforcement agencies, correctional agencies, and courts "with respect to the arrest, conviction, and release of any alien charged with an aggravated felony." *See* section 236(d)(1)(B) of the Act (as enacted by IIRIRA § 303(a), 110 Stat. at 586). We draw no meaningful guidance from this provision on the question of the meaning of the word "released" in the last sentence of section 303(b)(2) of the IIRIRA.

Although the focus of the Service's argument is on the interpretation of the word "released" in the "when released" language of section 236(c)(1) of the Act, we consider it appropriate to briefly summarize and respond to its other contentions in order to clarify our holding. The Service makes several arguments against interpreting the word "released" to mean freedom from physical restraint. The Service claims that certain statutory provisions of section 236(c) of the Act would be rendered ineffective by insistence on a "release" from physical custody. Citing to *Matter of Noble*, 21 I&N Dec. 672, 681-82 (BIA 1997), the Service offers the following as examples of aliens who would not be subject to mandatory detention: terrorists described in section 236(c)(1)(D) of the Act who have never been convicted of a crime, and aggravated felons described in section 236(c)(1)(B) of the Act who are not imprisoned, whether as the result of suspended sentences or of sentencing to probation. The Service also asserts that Congress clearly viewed aggravated felons as a category of criminal aliens who should be detained based solely on the nature of their convictions. In addition, the Service argues that the word "probation" in the "when released" language would become superfluous if a release from physical custody is required, and that a physical custody interpretation conflicts with the Board's decision in *Matter of Adeniji*, *supra*, in which we acknowledged that the term "released" could refer to psychiatric or other nonService confinement situations.

We do not find the Service's arguments convincing. The use of the words "release" or "released" in section 303 of the IIRIRA consistently appears to refer to a form of physical restraint. Furthermore, interpreting the word "released," as used in the "released after" language of section

1409

303(b)(2) of the IIRIRA, to mean freedom from physical restraint does not necessarily preclude the application of the mandatory detention provisions of section 236(c) of the Act to criminal aliens who have not been released from a term of imprisonment after October 8, 1998. "Released" in this context can also refer to release from physical custody following arrest, as is the case with the respondent. We find support for this interpretation in the fact that section 236(c) of the Act requires detention "when the alien is released, . . . without regard to whether the alien may be arrested . . . again for the same offense."

In *Matter of Adeniji*, *supra*, we accepted the interpretation proposed by the Service even though it created certain anomalies. The Service now points to other anomalies that we noted in *Matter of Noble*, *supra*. In our judgment, these anomalies bear mainly on the issues that we resolved in *Matter of Adeniji*. However, the Service does not seek to revisit *Matter of Adeniji* itself.

In the end, we are not persuaded to accord the statutory language any meaning other than that which we derive from an examination of the statute as a whole. As such, we construe the word "released" in the last sentence of section 303(b)(2) of the IIRIRA to refer to a release from physical custody. The respondent was last released from the physical custody of the State of New Jersey on December 10, 1997, prior to the expiration of the Transition Rules. He is therefore not subject to mandatory detention.

Accordingly, the appeal will be dismissed.

**ORDER:** The appeal of the Immigration and Naturalization Service is dismissed.