# United States Court of Appeals

## For the First Circuit

Nos. 07-1317, 07-1318

B. FERNÁNDEZ & HNOS, INC.; CARIBBEAN WAREHOUSE LOGISTICS, INC.,
Plaintiffs-Appellants/Cross-Appellants,

v.

KELLOGG USA, INC.; KELLOGG CARIBBEAN SERVICES COMPANY, INC.,
Defendants-Appellees/Cross-Appellants.

ABC INSURANCE; XYZ SURETY COMPANY;
PREFERRED INSURANCE; JOHN DOE; RICHARD ROE,

Defendants.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Jaime Pieras, Jr., Senior U.S. District Judge]

Before

Torruella and Howard, Circuit Judges,

and Smith,[*] District Judge.

Gael Mahony, with whom Holland & Knight LLP, Alfredo Fernández Martinez and Delgado & Fernández, LLP were on brief, for appellants.
Ricardo F. Casellas, with whom Casellas Alcover & Burgos, P.S.C. was on brief, for appellees.

February 14, 2008

[*]Of the District of Rhode Island, sitting by designation.

**HOWARD**, **Circuit Judge**.  Before us are an appeal and cross-appeal arising from an action brought by B. Fernández & Hnos., Inc. ("BFH") and Caribbean Warehouse Logistics ("CWL") against Kellogg USA, Inc. ("Kellogg USA") in the United States District Court for the District of Puerto Rico.  Jurisdiction was based on diversity of citizenship.  The district court dismissed the case, finding that Kellogg Caribbean Services, Inc. ("Kellogg Caribbean"), a non-party entitled to intervene in the matter, was an indispensable party to the action under Federal Rule of Civil Procedure 19 whose joinder would destroy complete diversity.

In the appeal, plaintiff BFH challenges the district court's indispensability determination.  BFH argues that the court erroneously denied two motions that would have rendered Kellogg Caribbean dispensable to its action against Kellogg USA.  In the cross-appeal, Kellogg USA and Kellogg Caribbean protest the court's decision, upon dismissal of BFH's action, to deny them costs and attorneys' fees.

We conclude that, even had the court granted BFH's motions, consideration of the Rule 19 factors guiding the indispensability analysis continue to support the dismissal. Additionally, we find no error in the district court's denial of costs and fees.  Thus, we affirm the district court's judgment.

## I. Background

We have previously discussed in detail the relevant background facts of this case. See B. Fernández & Hnos., Inc. v. Kellogg USA, Inc., 440 F.3d 541 (1st Cir. 2006) ("Kellogg I"). We provide a similar rehearsal here, gleaned from the record as it stands.

This dispute involves four players: Kellogg USA, a Michigan company that manufactures cereal products in the United States. Kellogg Caribbean, a Puerto Rico company that promotes, sells and distributes Kellogg products in Puerto Rico;[1] BFH, a Puerto Rico company that distributes Kellogg products in Puerto Rico; and CWL, a Puerto Rico company and affiliate of BFH that provides logistical and warehousing services.

For a number of years, BFH was Kellogg Company's exclusive agent in Puerto Rico. BFH purchased certain Kellogg brand cereal products for resale to customers in Puerto Rico, acting pursuant to written distribution agreements with various Kellogg entities. BFH also developed and implemented marketing plans for Kellogg products in Puerto Rico.

In 1992, BFH's relationship with the Kellogg family of companies began to change. In that year, BFH signed a non-exclusive, written distribution agreement with Kellogg USA ("the

---

[1] Kellogg USA and Kellogg Caribbean are affiliates of each other and subsidiaries of non-party Kellogg Company.

1992 agreement").  The 1992 agreement would serve as the last written distribution agreement between BFH and a Kellogg entity.  Further, Kellogg Caribbean was incorporated in 1993 and took over BFH's duties of developing and implementing marketing plans for Kellogg cereal products in Puerto Rico.  Sometime after Kellogg Caribbean's incorporation, Kellogg USA assigned its rights and obligations under the 1992 agreement to Kellogg Caribbean.

During and after these developments, BFH continued to purchase Kellogg products for resale in Puerto Rico.  In 1996, BFH established a distribution center to house its inventory of Kellogg products and, at Kellogg Caribbean's urging, created an affiliate company, CWL, to provide logistic and warehousing services at the center.

In October 2004, Kellogg Caribbean and BFH signed an Inventory Repurchase agreement ("the 2004 agreement") under which Kellogg Caribbean purchased BFH's inventory of Kellogg products. A purpose of this agreement was to allow Kellogg Caribbean to consolidate its warehouse and administrative functions into one facility.  The 2004 agreement also notified BFH that Kellogg Caribbean had been assigned Kellogg USA's interest in the 1992 agreement and provided that the 2004 agreement and "the activities it contemplates do not extinguish, supersede, or terminate the [1992 agreement], which, except as expressly modified by this [2004 agreement], continues in full force and effect."  The 1992

agreement, however, contained terms indicating that it expired in December of 1992.

After purchasing BFH's inventory of Kellogg products, Kellogg Caribbean hired CWL to manage Kellogg Caribbean's warehouse operation. There was no written contract for these services.

In November of 2004, Kellogg Caribbean informed BFH that it was exercising a provision in the 1992 agreement entitling Kellogg Caribbean to sell Kellogg's "Cereal in a Cup" and "Fruit Snacks" products directly to Puerto Rico retailers. BFH would remain the distributor of other Kellogg products.

BFH, contending that Kellogg Caribbean's decision violated its exclusive right to distribute Kellogg products in Puerto Rico, sued Kellogg USA in the United States District Court for the District of Puerto Rico. Jurisdiction was premised on diversity of citizenship. Specifically, BFH claimed that Kellogg USA, by permitting "it or its affiliates" to sell "Cereal in a Cup" and "Fruit Snacks" directly to retailers, had violated Puerto Rico Law 75 (P.R. Laws Ann. tit. 10 § 278), a statute prohibiting a principal from terminating a distribution agreement with a dealer without just cause. BFH claimed that its exclusive right to distribute Kellogg products derived from an unwritten, longstanding exclusive distribution agreement with Kellogg USA.

While the action was pending, Kellogg Caribbean notified CWL that it was ending their warehouse services agreement. As a

result of this decision, BFH moved to join CWL as a plaintiff and to amend its complaint to add a count alleging that Kellogg USA "and/or its affiliates" violated Law 75 by terminating the warehouse services agreement. The district court granted the motions. The plaintiffs sought declaratory and injunctive relief, as well as damages.

After BFH and CWL secured a temporary restraining order requiring CWL's reinstatement at the distribution center, Kellogg Caribbean moved "to intervene and dismiss for lack of an indispensable party." The district court denied Kellogg Caribbean's motion to intervene and, after an evidentiary hearing, entered a preliminary injunction requiring Kellogg USA "and/or its affiliates" to specifically perform the agreements with BFH and CWL pending trial. Kellogg Caribbean appealed from the denial of its motion to intervene, and Kellogg USA and Kellogg Caribbean filed an interlocutory appeal from the entry of the preliminary injunction.

In that appeal we concluded that Kellogg Caribbean met the requirements for intervention. Kellogg I, 440 F.3d at 547.[2] We noted, however, that intervention was not feasible because it

---

[2] The district court had denied intervention after concluding that Kellogg Caribbean's interests were sufficiently represented by Kellogg USA. We disagreed noting, among other things, that "The potential for this litigation to have a greater adverse impact on Kellogg Caribbean is a sufficient basis for concluding that Kellogg USA may not serve as an adequate proxy." Id. (citing Nat. Union Fire Ins. Co. v. Rite Aid of S. Carolina, Inc., 210 F.3d 246, 251 (4th Cir. 2000)).

would destroy the district court's diversity jurisdiction (Kellogg Caribbean, like BFH and CWL, is a Puerto Rico company). Id. Accordingly, we vacated the preliminary injunction and remanded to the district court with instructions to determine whether Kellogg Caribbean was indispensable to BFH's action against Kellogg USA. If Kellogg Caribbean was indispensable, then the action could not proceed in federal court. Fed. R. Civ. P. 19(b); see id. We observed that Kellogg Caribbean would be considered indispensable if BFH and CWL continued to seek injunctive relief requiring Kellogg Caribbean to perform under certain agreements. Kellogg I, 440 F.3d at 548.

On remand, BFH sought both to remove CWL as a party and to file an amended complaint. Taking its cue from our opinion in Kellogg I, BFH's proposed amended complaint excluded all claims relating to CWL and requested only money damages against Kellogg USA rather than injunctive relief.

The district court denied both BFH's motion to drop CWL and the motion to amend the complaint. The court concluded that Kellogg Caribbean was indispensable to BFH's action against Kellogg USA and consequently dismissed BFH's action without prejudice. Sua sponte, the court also denied Kellogg USA and Kellogg Caribbean costs and attorneys' fees.

## II. Discussion

Both sides appeal. BFH challenges the district court's

dismissal of the action, arguing that the court erroneously concluded that Kellogg Caribbean was indispensable to BFH's action against Kellogg USA. In their cross-appeal Kellogg USA and Kellogg Caribbean assert error in the district court's decision to deny them costs and attorneys' fees.

## A.  Indispensability

We determined in Kellogg I that Kellogg Caribbean could not intervene in BFH's action against Kellogg USA because its intervention would destroy diversity jurisdiction. Kellogg I, 440 F.3d at 548. Further, it was clear to us that Kellogg Caribbean was an indispensable party insofar as the requested injunctive relief applied to it. Id. Now, BFH attempts to modify the action so as to render Kellogg Carribean dispensable. The critical question in this round, then, is "whether in equity and good conscience" the action may proceed in Kellogg Caribbean's absence. Fed. R. Civ. P. 19(b). If we conclude that it cannot, the action must be dismissed and Kellogg Caribbean labeled an "indispensable" party. See 4 Moore's Federal Practice § 19.05(1)(a) (3d ed. 2000) (noting that on dismissal of a case for non-joinder of the absentee under Rule 19(b) the absentee is then retroactively labeled "indispensable").

Federal Rule of Civil Procedure 19(b) specifies four factors to guide the indispensability inquiry. These include:

> (1) To what extent a judgment rendered in the person's absence might be prejudicial to the

-8-

person or those already parties; (2) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; (3) whether a judgment rendered in the person's absence will be adequate; (4) whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Fed. R. Civ. P. 19(b). The Second Circuit has observed that no set weight is afforded to any of the factors, Associated Dry Goods Corp. v. Towers Fin. Corp., 920 F.2d 1121, 1124 (2d Cir. 1990). Moreover, the specified factors do not constitute an exhaustive canvass, and a court may take into account other considerations in determining whether or not to proceed without the absentee as long as they are relevant to the question of whether to proceed in "equity and good conscience." In re Cambridge Biotech Corp., 186 F.3d 1356, 1369 (Fed. Cir. 1999) (citation omitted); Fed. R. Civ. P. 19, advisory committee note ("The factors . . . are not intended to exclude other considerations which may be applicable in particular situations."). In the end, the indispensability analysis involves "the balancing of competing interests" and "must be steeped in pragmatic considerations." In re Olympic Mills Corp., 477 F.3d 1, 9 (1st Cir. 2007) (citing Travelers Indem. Co. v. Dingwell, 884 F.2d 629, 635 (1st Cir. 1989)).

The foundation of BFH's argument is its claim that the district court erroneously denied its motions to drop CWL as a party and to amend the complaint. As a result, the court analyzed

the indispensability issue as if CWL were still a party to the action and as framed by the first amended complaint.[3] Had BFH's motion been granted, the argument continues, Kellogg Caribbean would be dispensable because the motions served to eliminate any prejudice Kellogg Caribbean might suffer as a result of BFH's action against Kellogg USA proceeding in Kellogg Caribbean's absence.

We need not determine whether the district court erroneously denied BFH's motions to amend because, even had the court granted the motions, Kellogg Caribbean would remain indispensable to the action.[4] There are two reasons for this conclusion.

---

[3] BFH appears to concede that with CWL as co-plaintiff, and under its first amended complaint which requested injunctive relief, Kellogg Caribbean is an indispensable party. As noted, we stated as much in Kellogg I. See Kellogg I, 440 F.3d at 548.

[4] We have no hesitation in proceeding to answer the indispensability question. Although a district court is generally in the preferred position to make an indispensability determination, and should normally be given the first opportunity to analyze the question, we have noted that some situations favor us deciding the joinder issue on appeal. See Olympic Mills Corp., 477 F.3d at 9 (citing Takeda v. Nw. Nat'l Life. Ins. Co., 765 F.2d 815, 818 n.2 (9th Cir. 1985) ("Although in some cases it might be desirable to remand to allow a district court to determine whether a non-diverse party is indispensable, we have the power to decide the joinder issue on appeal")). The record being clear and complete, and because we have already remanded this matter once before, for reasons of economy we proceed to analyze the question ourselves on the basis of the proposed second amended complaint.

**1.**

First, all four 19(b) factors still militate in favor of finding Kellogg Caribbean indispensable to BFH's action against Kellogg USA. The first factor concerns the potential prejudice to the absentee if the action goes forward. BFH appears to suggest that dropping CWL as a party and removing claims relating to CWL would eliminate a potential source of prejudice to Kellogg Caribbean's interests because BFH's action against Kellogg USA will not require any interpretation of CWL's warehouse services agreement with Kellogg Caribbean.

But this course, at most, would only eliminate one potential source of prejudice. If BFH secures a judgment against Kellogg USA, the judgment could still harm Kellogg Caribbean's interest in an entirely different agreement -- its 2004 agreement with BFH. The judgment would effectively stand for the proposition that BFH and Kellogg USA have an exclusive, unwritten distribution agreement. Although the judgment may not have collateral estoppel effect against Kellogg Caribbean as a non-party, such a judgment would serve as persuasive precedent that the 2004 agreement Kellogg Caribbean reached with BFH is invalid to the extent that the 2004 agreement established that Kellogg USA assigned a non-exclusive, written distribution agreement with BFH to Kellogg Caribbean. That precedent could prejudice Kellogg Caribbean in future litigation whether Kellogg Caribbean is attempting to enforce or defend the

2004 agreement.[5]  See Acton Co. of Mass. v. Bachman Foods, Inc., 668 F.2d 76, 78 (1st Cir. 1982) ("Even if . . . [the absent party] would not be legally bound [by the prior ruling], an adverse ruling would be a persuasive precedent in a subsequent proceeding, and would weaken . . . [the absent party's] bargaining position for settlement purposes"); NLRB v. Doug Neal Mgmt. Co., 620 F.2d 1133, 1139 (6th Cir. 1980) ("It is not necessary that an absent person would be bound by the judgment in a technical sense. It is enough that as a practical matter his rights will be affected.") (citation omitted)).

Nonetheless, BFH points to 19(b)'s second factor and argues that a court could shape relief in this case to minimize or eliminate the prejudicial effect of proceeding without Kellogg Caribbean. During our first examination of this case we did state that on remand the district court could consider shaping relief in such a manner so as to avoid prejudicing Kellogg Caribbean's interests. Kellogg I, 440 F.3d at 548 (noting money damages may

---

[5]  BFH contends that this potential source of prejudice is a chimera. It argues that Kellogg USA could not have assigned any interest in the 1992 agreement because the agreement, according to its terms, had expired in 1992. Its argument misses the point. Kellogg Caribbean argues that the 2004 agreement explicitly establishes that the 1992 agreement is still in operation. There is language in the 2004 agreement that arguably supports this contention. If BFH prevails in establishing that it has an exclusive, unwritten distribution agreement with Kellogg USA, however, the judgment would serve to substantially weaken Kellogg Caribbean's argument regarding the validity of the 2004 agreement and, thus, its ability to enforce or defend the agreement itself.

prove an appropriate alternative). BFH argues that because its proposed amended complaint seeks money damages rather than injunctive relief, the possibility of prejudice to Kellogg Caribbean is eliminated. It contends that money damages, unlike injunctive relief, will not compel Kellogg USA to sell exclusively to BFH and consequently, that Kellogg Caribbean in no way will be forced to perform under BFH's agreement with Kellogg USA.

The argument is unconvincing. As an initial matter, it is not at all clear that money damages could be awarded in this case. In its proposed amended complaint, BFH states that Kellogg USA has breached an exclusive, unwritten distribution agreement. Unsurprisingly, BFH does not, however, suggest that this agreement has any set expiration date. Moreover, although BFH suggested at oral argument that it is willing to limit the damage request, it also acknowledges that damages it has suffered as a result of Kellogg USA's alleged breach are "not easily calculable . . . and increase on a daily basis." Given the apparent recurring nature of the alleged breach, and the admitted difficulty in quantifying money damages, some form of injunctive relief may be necessary. See 12 Corbin on Contracts § 1142 at 194 (interim ed. 2002) (noting money damages may be inadequate and specific performance necessary if, among other things, there is a recurring injury which requires "multiple actions for damages" and there is "difficulty in determining the amount of damages to be awarded for defendant's

-13-

breach").

But even assuming an award of money damages could be fashioned pursuant to a judgment in favor of BFH, as we have said the judgment itself could still prejudice Kellogg Caribbean. Although an award of money damages would not require Kellogg Caribbean to perform under BFH's agreement with Kellogg USA, the judgment itself would still serve as persuasive precedent that Kellogg Caribbean's 2004 agreement with BFH, at least to the extent that it extends the 1992 agreement, is invalid. The potential for prejudice remains no matter how relief is sliced. See Picciotto v. Cont'l Cas. Co., 2008 U.S. App. LEXIS 206, at *22 (1st Cir. January 7, 2008) (noting that "the prejudice to [the absentee] would result from the potential outcome of the litigation itself, not the specific terms of any judgment"); Schutten v. Shell Oil Co., 421 F.2d 869, 875 (5th Cir. 1970) ("[W]e are unable to envision a decree which would effectively settle any controversy between the appellants and the present defendant . . . without doing substantial practical injury to the [absentee.]").

The third and fourth 19(b) factors also favor finding Kellogg Caribbean indispensable. The third factor concerns whether, if the action proceeds without the absentee, the judgment rendered will be adequate. A judgment is "adequate" if it furthers the public interest in "complete, consistent, and efficient" resolution of controversies. See Provident Tradesmens Bank & Trust

<u>Co.</u> v. <u>Patterson</u>, 390 U.S. 102, 111 (1968) (noting third factor concerns "public stake in settling disputes by wholes, whenever possible").

Here, proceeding without Kellogg Caribbean would not further this public interest for two reasons. First, it would not efficiently resolve the dispute in this case. As we have emphasized, and as BFH acknowledges, the question of whether or not BFH has an exclusive agreement with Kellogg USA depends in significant part on the meaning and effect of the 2004 agreement that BFH reached with Kellogg Caribbean. That is a question with which Kellogg Caribbean's rights are inextricably bound. <u>See</u> <u>Envirotech</u> v. <u>Bethlehem Steel Corp.</u>, 729 F.2d 70, 75 (2d Cir. 1984) (affirming district court's finding of indispensability where court concluded absentee possessed rights that were "inextricably intertwined" with issues bound to be raised in action against defendant).

Second, proceeding without Kellogg Caribbean would unnecessarily create the possibility of inconsistent judgments. For example, BFH could secure a judgment against Kellogg USA after proving that it has an exclusive, unwritten agreement with Kellogg USA that Kellogg USA breached. We explained that such a judgment could practically prejudice Kellogg Caribbean, but we have also noted that the judgement may not have a collateral estoppel effect against Kellogg Caribbean. Therefore, it remains possible that in

-15-

a different action another court could conclude that BFH has a non-exclusive, written agreement with Kellogg Caribbean by virtue of a valid assignment of the 1992 agreement by Kellogg USA.

With respect to the fourth and final 19(b) factor, we do not see why BFH will be without an adequate remedy if we uphold the district court's dismissal of the action. We are aware of no impediment, not of its own making, preventing BFH from pursuing its asserted cause of action in the courts of the Commonwealth of Puerto Rico. See Picciotto, 2008 U.S. App. LEXIS 206, at *22 (noting that court's indispensability finding would remain unchanged even if party was barred from pursuing a remedy in an alternative forum because bar resulted from party's litigation strategy).

## 2.

Turning to the second reason, in Kellogg I we foresaw the possibility that Kellogg Caribbean could be so central to this dispute as to render it indispensable to any action concerning the dispute. See Kellogg I, 440 F.3d at 548 (noting district court "could decide that Kellogg Caribbean's involvement in the underlying dispute is so extensive that it is indispensable to a proper adjudication of the case and therefore dismiss the action entirely"). The prediction has come to pass.

In H.D. Corp. of Puerto Rico v. Ford Motor Co., 791 F.2d 987 (1st Cir. 1986), we noted that one of the interests Rule 19(b)

concerns is "the interest of the outsider whom it would have been desirable to join." Id. at 992 (citing Provident Tradesmans, 390 U.S. at 108). In H.D. Corp., the plaintiff had not sued an affiliate, the defendant's parent company. In analyzing the interest of the absentee, we observed that the parent was alleged, inter alia, to have been a signatory to agreements that were central to the dispute, and as well to have wrongfully induced a breach of a key agreement. In light of these observations, we said that it would impractical to proceed without the absentee. So too, here.

As was true of the absentee in H.D. Corp., Kellogg Caribbean's alleged role here is apparent from the face of the proposed second amended complaint. One count alleges with respect to the October 2004 agreement that an "affiliate [of Kellogg USA] used words and insidious machinations to induce BFH to execute the October 15, 2004 [sic] purported amendment. Without such words and insidious machinations BFH would not have executed the amendment."

Beyond this, even ignoring BFH's 2004 agreement with Kellogg Caribbean entirely, a close reading of the proposed amended complaint reveals that BFH identifies Kellogg Caribbean as playing a significant role throughout the course of Kellogg USA's alleged legal violations. The complaint contains over twenty references to an unnamed affiliate that carried out the actions which BFH contends constituted a violation of Law 75. The unnamed affiliate

is Kellogg Caribbean.  For example, the proposed complaint states that on November 1, 2004 Kellogg Company and Kellogg USA "acting through their affiliate notified BFH in writing that . . . the affiliate would begin selling directly to customers."  It is uncontested that *Kellogg Caribbean* was the entity that notified BFH in writing that it would begin selling Kellogg's "Cereal in a Cup" and Kellogg's "Fruit Snacks" direct to customers via its own sales force.

Given that Kellogg Caribbean was a central player -- perhaps even the primary actor -- in the alleged breach, the practical course here, as it was in H.D. Corp., is to proceed in a forum where the absentee may be joined.  See Freeman v. Northwest Acceptance Corp., 754 F.2d 553, 559 (5th Cir. 1985) (finding absentee indispensable where absentee "'becomes more than a key witness whose testimony would be of inestimable value [and] [i]nstead emerges as an active participant'" in alleged legal violation) (quoting Hass v. Jefferson Nat'l Bank, 442 F.2d 394, 398 (5th Cir. 1971)); Circle Indus., Div. of Nastasi-White, Inc. v. City Fed. Sav. Bank, 749 F. Supp. 447, 456 (E.D.N.Y. 1999) (finding absentee indispensable where plaintiff's claims of fraud were grounded on actions taken by absentee party).

In sum, considering especially the potential prejudice to Kellogg Caribbean if the federal action proceeds in its absence and the centrality of Kellogg Caribbean's alleged role in the dispute,

the interests weigh decidedly toward finding Kellogg Caribbean indispensable.  Consequently, we affirm the district court's dismissal of the action.[6]

## B.  Costs and attorneys' fees

In their cross-appeal, Kellogg USA and Kellogg Caribbean contend that the district court's sua sponte denial of costs and attorneys' fees without explanation constituted an abuse of discretion.  We note that it appears neither party had the opportunity to file a bill of costs or a motion for attorneys' fees.

As to the denial of costs, the contention is that, because the court dismissed BFH's action against Kellogg USA, the Kellogg entities are prevailing parties and are presumptively entitled to recover their costs of suit under Federal Rule of Civil Procedure 54(d).  The Kellogg entities identify two grounds in support of their request for attorneys' fees.  First, they assert that when a party prevails under Law 75 a court may grant that party attorneys' fees.  Second, they claim that BFH made baseless

---

[6]  Although the district court properly dismissed this action without prejudice, we may quibble with the manner in which it did so.  The court appeared to add Kellogg Caribbean to the action and then dismiss  the action, on the ground that it no longer possessed subject matter jurisdiction over the case.  More likely, Kellogg Caribbean should not have been joined in the first place precisely because joining Kellogg Caribbean as a party would destroy subject matter jurisdiction. See 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1917, at 477-78 (2d ed. 1986).  Thus, the the action should have been dismissed for non-joinder of Kellogg Caribbean pursuant to Rule 19(b).

-19-

factual allegations in its pleadings. As a result, attorneys' fees are warranted under 28 U.S.C. § 1927, which permits a court to grant fees as a sanction for abusive litigation tactics.

We review the denial of both costs and attorneys' fees for abuse of discretion. See Janeiro v. Urological Surgery Prof'l Ass'n, 457 F.3d 130, 143 (1st Cir. 2006). There is a background presumption favoring cost recovery for prevailing parties. In Re Two Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig., 994 F.2d 956, 963 (1st Cir. 1993). When denying costs, a district court must offer an explanation for doing so unless the basis for denying costs is "readily apparent on the face of the record." Id. (concluding district court abused its discretion in denying costs without explanation where basis for denial was not apparent from the record); see also Templeman v. Chris Craft Corp., 770 F.2d 245, 249 (1st Cir. 1985) (reversing district court's denial of costs to prevailing party where court failed to give valid explanation for denial and record supported an award of costs).

Assuming that Kellogg USA and Kellogg Caribbean can be considered prevailing parties within the ambit of cost recovery doctrine, the district court's unexplained decision to deny costs does not constitute an abuse of discretion because the reason for its denial is readily apparent from the record. This case, like many other cases calling for an indispensability determination

under Rule 19(b), presented a close question that required considered balancing.  As such, the record supports the district court's determination that each side should bear its own costs.  See San Juan Dupont Plaza Hotel Fire Litig., 994 F.2d at 963 (citing White & White, Inc. v. Am. Hosp. Supply Corp., 786 F.2d 728, 730 (6th Cir. 1986) (noting where case proves "close and difficult" district court's denial of costs may be appropriate exercise of discretion)).

As to attorneys' fees, Kellogg USA and Kellogg Caribbean do not explain in their opening brief why they should be entitled to fees, but rather make the argument in their reply brief.  Accordingly, the argument is waived.  Willis v. Brown University, 184 F.3d 20, 27 (1st Cir. 1999).  In any event, the district court did not abuse its discretion in denying attorneys' fees.  Attorneys' fees are recoverable in diversity cases where a state law provides the right to recover such fees.  See McLane, Graf, Raulerson & Middleton, P.A. v. Rechberger, 280 F.3d 26, 42 (1st Cir. 2002) (quoting Alyeska Pipeline Serv. Co. v. The Wilderness Soc'y, 421 U.S. 240, 260 n.31 (1974)).  But to the extent that Kellogg USA and Kellogg Caribbean prevailed, they did so under Rule 19(b) and not under Law 75.  Therefore, the section of Law 75, (P.R. Laws Ann. tit. 10 § 278e), which purportedly entitles a prevailing party to recover attorneys' fees, is simply not

operable.[7]  Additionally, we find no merit in Kellogg USA and Kellogg Caribbean's charge that BFH engaged in abusive litigation tactics that would warrant a fee award under 28 U.S.C. § 1927.

**AFFIRMED**

---

[7] We additionally note that an award of attorneys' fees under Law 75 is within the district court's discretion.  P.R. Laws Ann. Tit. 10 § 278e.