# Matter of Houng SAYSANA, Respondent

File A025 082 285 - Boston

*Decided August 27, 2008*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1)  The language of section 236(c)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1226(c)(1) (2006), does not support limiting the non-DHS custodial setting solely to criminal custody tied to the basis for detention under that section.

(2)  The respondent is subject to mandatory detention following his release from non-DHS custody resulting from his 2005 arrest for failure to register as a sex offender, even though that arrest did not lead to a conviction.

FOR RESPONDENT:  Kerry E. Doyle, Esquire, Boston, Massachusetts

FOR THE DEPARTMENT OF HOMELAND SECURITY:  Jerry R. DeMaio, Assistant Chief Counsel

BEFORE:  Board Panel:  OSUNA, Acting Chairman; PAULEY, Board Member; SNOW, Temporary Board Member.

PAULEY, Board Member:

In a decision dated July 24, 2007, an Immigration Judge granted the respondent's request for release from custody and ordered him released from the custody of the Department of Homeland Security ("DHS") upon posting a bond in the amount of $3,500.  The DHS has appealed from that decision. The appeal will be sustained.

## I.  FACTUAL AND PROCEDURAL HISTORY

The respondent is in removal proceedings, having been charged with removability under section 237(a)(2)(A)(iii) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(A)(iii) (2006), based on his November 15, 1990, conviction for indecent assault and battery in violation of chapter 265, section 13 of the Massachusetts General Laws.  He was sentenced to a term of imprisonment of 5 years.  The DHS charged that the respondent was subject to removal for committing an aggravated felony crime of violence

as defined in section 101(a)(43)(F) of the Act, 8 U.S.C. § 1101(a)(43)(F) (2006). The respondent does not contend that the DHS is substantially unlikely to prevail on the charges of removability. *See Matter of Joseph*, 22 I&N Dec. 799 (BIA 1999).

The respondent was subsequently arrested for failure to register as a sex offender on May 3, 2005, in violation of chapter 6, section 178H(a) of the Massachusetts General Laws, although the charge was later dismissed. The Immigration Judge concluded that because the offense was "tantamount to a regulatory offense" that did not lead to a conviction, the respondent's arrest did not constitute criminal custody that occurred after the expiration of the Transition Period Custody Rules ("TPCR"). She therefore found that the respondent was not subject to mandatory detention. The Immigration Judge further found that the respondent was not a danger to the community and set bond at $3500 to assure his appearance.

On appeal, the DHS argues that the Immigration Judge erred in finding that the respondent was not subject to mandatory detention because he has been convicted of an offense of a type enumerated in section 236(c) of the Act, 8 U.S.C. § 1226(c) (2006), namely, an aggravated felony, and he has been released from non-DHS custody after the expiration of the TPCR. The respondent contends that the Immigration Judge was correct in finding that he is not subject to mandatory detention because "[t]he government's interpretation of the statute as applying to a 'release' that is unrelated to any of the offenses enumerated in subsection (c) is contrary to the plain meaning of INA § 236(c)."

## II. ISSUE

The principal issue presented in this appeal is whether the post-TPCR "release" from a non-DHS custodial setting under section 303(b)(2) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-586 ("IIRIRA"),[1] must be directly tied to the basis for detention under

---

[1] We previously considered section 236(c) of the Act in *Matter of Rojas*, 23 I&N Dec. 117 (BIA 2001), but the issue there was different and of a temporal nature—namely, whether the words "when released" imported a requirement that an alien be taken into custody immediately upon the alien's release. We concluded that the alien's argument fairly implicated the "when released" clause of section 236(c). But we found that that clause only served to designate the point at which the Attorney General's responsibility to take an alien into custody commenced, and that the clause *did not describe the categories of aliens subject to mandatory detention*. Hence, properly analyzed in the light of our decision in *Matter of Rojas*, and contrary to the parties' understanding, this case does not directly

(continued...)

sections 236(c)(1)(A)-(D) of the Act.  We have not specifically addressed this question in a prior precedent decision.

## III.  ANALYSIS

Pursuant to the regulation at 8 C.F.R. § 1003.19(h)(2)(i)(D) (2008), an Immigration Judge is without authority to redetermine the conditions of custody of an alien in removal proceedings subject to section 236(c)(1) of the Act.  Under section 236(c)(1)(B), the Attorney General must take into custody any alien who is deportable by reason of having committed any offense covered in sections 237(a)(2)(A)(ii), (iii), (B), (C), or (D) of the Act when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

The "released" language of section 236(c)(1) of the Act is not expressly tied to any other language that would clarify whether it refers to release from criminal custody, DHS custody, or some other form of detention.  However, we have interpreted this language to include a release from a non-DHS custodial setting after the expiration of the Transition Period Custody Rules enacted by section 303(b)(3) of the IIRIRA, 110 Stat. at 3009-586.  *See Matter of Adeniji*, 22 I&N Dec. 1102 (BIA 1999).  Our latest decision interpreting the mandatory detention provisions was *Matter of Kotliar*, 24 I&N Dec. 124 (BIA 2007), where we held that an alien need not be charged with the ground that provides the basis for mandatory detention in order to be found "deportable" on that ground.  *Matter of Kotliar* is consistent with the result we reach today and contains some of the reasoning supporting our decision.

Upholding the constitutionality of section 236(c) of the Act in *Demore v. Kim*, 538 U.S. 510, 528 (2003), the Supreme Court stated that mandatory detention under that section "serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully

---

(...continued)

implicate section 236(c).  Rather, the issue posed involves whether or not the alien has been "released" under section 303(b)(2) of the IIRIRA after the expiration of the TPCR so as to be subject to section 236(c).  *See Matter of West*, 22 I&N Dec. 1405, 1407 (BIA 2000).  However, inasmuch as both section 303(b)(2) of the IIRIRA and section 236(c) of the Act use the term "released," which we deem to have the same meaning in both provisions, it does not matter for purposes of this case under which of these statutes the respondent's claim rightly falls in light of the contentions raised by the respondent and addressed herein.  Consequently, at times we have referred to both statutes interchangeably in this decision.  *Id.* at 1407-09.

removed." We have previously identified the same rationale for this statute in several precedent decisions. *See, e.g.*, *Matter of Rojas*, 23 I&N Dec. 117 (BIA 2001); *Matter of Noble*, 21 I&N Dec. 672 (BIA 1997).

In analyzing this case it is important to bear in mind this primary purpose underlying section 236(c). However, the instant case involves issues different from those previously addressed by the Supreme Court and this Board. It concerns instead the *limitation* placed by Congress on the scope of the statute's command that the Attorney General take into custody those aliens who otherwise fall within the categories described in sections 236(c)(1)(A)-(D)—namely, that not every such alien who is found must be detained without bond, but that the command applies only to those falling in a described category who are "released after" the expiration of the TPCR. *See* IIRIRA § 303(b)(2). We are called upon to determine if this "released after" limitation operates as a substantive restriction requiring that the release be tied to the basis for the alien's inclusion in one of the enumerated categories. We conclude that the "released after" provision was intended solely to respond to practical concerns about the ability of the Government to detain all aliens falling within a covered category, and that the concept of "release" carries no substantive restriction other than that previously determined by the Board, i.e., that the custody from which "release" occurs must be from a non-DHS setting.[2]

As previously noted, the language of the last sentence of the TPCR does not identify the form of detention from which an alien must be released. Rather, we have interpreted the statute to require that the release be from a non-DHS custodial setting. A reading of the statute as a whole does not suggest that Congress intended to further limit the non-DHS custodial setting to criminal custody pursuant to a conviction for a crime rendering an alien removable. Indeed, as we have observed before, under sections 236(c)(1)(A) and (D) of the Act, an alien need not be convicted of any offense in order to be removable as charged and subject to mandatory detention.[3] Requiring that an alien's release from criminal custody be directly tied to the basis for detention under section 236(c)(1) would therefore be inconsistent with Congress's mandate to take into custody those aliens who are released after the expiration of the TPCR, yet who may never have been in non-DHS custody because they are

---

[2] The respondent relies on a contrary district court decision construing the TPCR regime. *Pastor-Camarena v. Smith*, 977 F. Supp. 1415 (W.D. Wash. 1997). We have previously noted our disagreement with the rationale in that case. *See Matter of Rojas*, *supra*, at 125-26.

[3] For instance, sections 212(a)(2)(A), (C), (D), (E), (G), (H), and (I) of the Act, 8 U.S.C. §§ 1182(a)(2)(A), (C), (D), (E), (G), (H), and (I) (2006), as well as sections 212(a)(3)(B) and (4)(B), do not require a criminal conviction.

inadmissible under the covered grounds set forth in sections 236(c)(1)(A) and (D). Thus, we find that the language and scope of section 236(c)(1) of the Act do not support limiting the non-DHS custodial setting solely to criminal custody that is related to, or that arises from, the basis for detention under that section.[4]

Both the purpose and history of section 236(c)(1) of the Act also support this construction. As previously indicated, the purpose of the section is to impose a duty on the DHS to continue to detain criminal and terrorist aliens pending the completion of proceedings to remove such aliens from the United States once they are no longer in the custody of another entity. In this regard, Congress was presumably aware that aliens may commit multiple offenses and may come into non-DHS custodial authority in a variety of ways.[5] It is illogical to suppose that Congress would not have wanted to require the DHS to detain a criminal or terrorist alien as set forth in sections 236(c)(1)(A)-(D) of the Act pending completion of proceedings to remove the alien from the United States solely because the alien had been released from non-DHS custody *for an additional offense* after the expiration of the Transition Period Custody Rules.

As for history, Congress has consistently demonstrated a desire that criminal and terrorist aliens be detained during the pendency of their proceedings. With the passage of section 7343 of the Anti-Drug Abuse Act of 1988, Pub. L. No. 100-690, 102 Stat. 4181, 4470 (effective Nov. 18, 1988), Congress initially crafted a provision mandating that any alien convicted of an aggravated felony be detained without bond. Subsequently, in the Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978 (effective Nov. 29, 1990) ("1990 Act"), Congress carved out an exception to mandatory detention for certain lawful permanent resident aggravated felons, provided they could overcome presumptions against release. *See Matter of De La Cruz*, 20 I&N Dec. 346 (BIA 1991). In the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (enacted Apr. 24, 1996) ("AEDPA"), Congress expanded the grounds subjecting an alien to mandatory detention

---

[4] In this regard, we note that section 236(c)(1) of the Act contains language providing that the duty of the DHS to detain the respondent arises "without regard to whether the alien may be arrested or imprisoned again *for the same offense*." In other cases before us it has been argued that such language has no meaning unless it refers back to the offenses described in sections 236(c)(1)(A)-(D). We disagree with that assertion. The clause is more reasonably read to refer to release from custody for any offense, a reading which is consistent with the reasons given in *Matter of Adeniji*, *supra*, at 1110-11, for accepting the parties' interpretation of the "released after" language of the related provision in section 303(b)(2) of the IIRIRA as a savings clause.

[5] *See, e.g.*, *Matter of West*, *supra*, at 1410, noting the possibility that custody and release may occur through an arrest.

pending the outcome of immigration proceedings and removed the exception created by the 1990 Act. Significantly, the AEDPA contained no limitation similar to that in current section 236(c) of the Act requiring that the covered classes of aliens be detained only "when released."

The requirements of the AEDPA, however, were in effect for only a few months before they were superseded by the IIRIRA. In response to concerns expressed by the former Immigration and Naturalization Service (now a part of the DHS), as well as other interested parties, that the Government was fiscally unprepared to enforce the detention mandate imposed in the AEDPA, Congress enacted two provisions in the IIRIRA that ameliorated this burden. The first afforded a transition period of up to 2 years during which detention decisions would permit the release of certain specified criminal and terrorist aliens, provided they could overcome statutory presumptions against release. The second, at issue here, was the inclusion of the identical "when released" language in both the transition period provisions set forth in section 303(b)(3) of the IIRIRA, *see Matter of Noble*, *supra*, and the permanent provisions of section 236(c) of the Act.

Thus, for well over a decade Congress has expressed through legislation its intent that criminal and terrorist aliens should generally, if not always, be detained until the completion of their immigration proceedings. The legislation indicates that Congress views criminal and terrorist aliens as threats to persons and property in the United States who should be segregated from society until a decision can be made regarding whether they will be allowed to remain in this country. It further reflects that Congress views them as poor bail risks who have little likelihood of relief from removal and who therefore have little incentive to appear for their hearings if they are released from custody, regardless of family and community ties. While the "released" language of the IIRIRA limits to manageable proportions the numbers of such aliens that come into contact with the DHS, it should not be construed—in light of the predominant statutory purpose—to confer any additional substantive restriction on the categories of aliens that Congress considered subject to mandatory detention, beyond the requirement that they have been released, after the expiration of the TPCR, from non-DHS custody.[6]

---

[6] The "released" clause thus was not designed, and does not function as a means, to distinguish between those aliens who are most deserving of mandatory detention and those who are not. It was also not intended to create substantive rights for certain classes of aliens. Rather, the "released" clause merely operates to reduce the practical burden on the enforcing agency. Congress could reasonably expect that many aliens falling within the ambit of section 236(c)(1) would be immediately taken into DHS custody through detainers or similar arrangements following their incarceration or arrest by State or Federal authorities. This is

(continued...)

We find that the language of section 236(c)(1) of the Act does not support limiting the non-DHS custodial setting solely to criminal custody tied to the basis for detention under that section. Moreover, the Immigration Judge clearly erred in ruling that, merely because the respondent's post-TPCR arrest did not result in a conviction and the charge was dismissed, the respondent was not "released" from non-DHS custody. *See Matter of West*, *supra*. The dismissal of the charges against the respondent does not mean that his arrest was unlawful or improper such that a colorable argument lies that he was not "released" for purposes of the statute.[7] Accordingly, the appeal of the DHS will be sustained, and the Immigration Judge's July 24, 2007, custody order will be vacated because she lacked jurisdiction under the regulations to redetermine the conditions of the respondent's custody.

**ORDER:** The appeal of the Department of Homeland Security is sustained.

**FURTHER ORDER:** The decision of the Immigration Judge is vacated.

---

(...continued)

not the respondent's circumstance, so his case does not fall within the typical pattern arising in mandatory detention cases. Nonetheless, the result in this case still serves to further the congressional purpose in enacting the mandatory detention statutes at issue.

[7] However, we note that our decision is premised on the specific facts in the instant case. We need not address here variations in circumstances that may arise and present a closer call, such as when an alien shows that an arrest was unlawful and the release from an unlawful detention has triggered the mandatory detention provisions of the Act.