# United States Court of Appeals
## For the First Circuit

No. 14-1035

MAJ. SHANNON L. MCLAUGHLIN; CASEY MCLAUGHLIN;
LTC. VICTORIA A. HUDSON; MONIKA POXON; COL. STEWART BORNHOFT;
STEPHEN MCNABB; LT. GARY C. ROSS; DAN SWEZY; CPT. STEVE M. HILL;
JOSHUA SNYDER; A1C DANIEL HENDERSON; JERRET HENDERSON;
CW2 CHARLIE MORGAN; KAREN MORGAN; CPT. JOAN DARRAH;
JACQUELINE KENNEDY,

Plaintiffs, Appellants,

v.

CHUCK HAGEL, in his official capacity as Secretary of Defense;
ERIC H. HOLDER, JR., in his official capacity as Attorney
General; ERIC K. SHINSEKI, in his official capacity as Secretary
of Veterans Affairs; UNITED STATES,

Defendants, Appellees.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

---

Before

Lynch, Chief Judge,
Torruella and Ripple,[*] Circuit Judges.

---

Christopher D. Man, with whom Abbe David Lowell, and
Chadbourne & Parke LLP were on brief, for appellants.
Jeffrey E. Sandberg, Attorney, Appellate Staff, Civil
Division, with whom Michael E. Robinson, Attorney, Appellate Staff,
Civil Division, Stuart F. Delery, Assistant Attorney General,
Carmen M. Ortiz, United States Attorney, and Michael Jay Singer,
Attorney, Appellate Staff, Civil Division, were on brief, for
appellee.

---

[*]     Of the Seventh Circuit, sitting by designation.

September 23, 2014

**LYNCH, <u>Chief Judge</u>**.  The plaintiffs ("McLaughlin Group"), who prevailed in a constitutional challenge to Section 3 of the Defense of Marriage Act ("DOMA"), 1 U.S.C. § 7, appeal from the district court's denial of fees and costs under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. §§ 2412(a)(1) & (d). Whether prevailing parties who successfully challenged Section 3 of DOMA are entitled to fees under EAJA is an issue of first impression in any Court of Appeals.

On appeal, the McLaughlin Group argues that the government's position could not have been substantially justified because its pre-litigation and during-litigation position involved "knowingly and intentionally violat[ing] the [McLaughlin Group's] constitutional rights," and its litigate-to-lose strategy concedes that its position is not substantially justified.[1]  The McLaughlin Group also contends that, even if not entitled to fees, they are entitled to $350 in costs under a separate provision of the EAJA, 28 U.S.C. § 2412(a), and Fed. R. Civ. P. 54(d).

We reject these arguments.  The district court's denial of fees was correct as a matter of law because the government reasonably believed its actions were constitutionally appropriate under the circumstances.  <u>See</u> <u>Aronov</u> v. <u>Napolitano</u>, 562 F.3d 84, 94 (1st Cir. 2009) (en banc).  And its denial of costs without comment

---

[1]  We use "government" to refer only to the Executive Branch, not to the Bipartisan Legal Advisory Group of the U.S. House of Representatives who intervened in this case.

was not an abuse of discretion because the reason for the denial -- that the case was "close and difficult" -- was "readily apparent on the face of the record."  See B. Fernández & HNOS, Inc. v. Kellogg USA, Inc., 516 F.3d 18, 28 (1st Cir. 2008) (quoting In re Two Appeals Arising Out of the San Juan DuPont Plaza Hotel Fire Litig., 994 F.2d 956, 963 & n.9 (1st Cir. 1993)).

## I.

The McLaughlin Group are active duty members of the United States armed forces and National Guard, veterans, and their same-sex spouses.  On October 27, 2011, they brought suit against the United States of America, and Secretary of Defense Leon E. Panetta, Attorney General Eric H. Holder, Jr., and Secretary of Veterans Affairs Eric K. Shinseki, in their official capacities. The suit challenged the constitutionality of Section 3 of DOMA as applied to definitions of marriage in Title 10, Title 32, and Title 38 of the United States Code as they affect same-sex military spouses.

President Obama had previously determined, eight months earlier in February 2011, that:

> (1) he personally believed that Section 3 of DOMA was unconstitutional;
>
> (2) out of deference to the courts and to Congress, and in light of the executive's obligation to faithfully execute the laws, the President would nonetheless

instruct that the executive branch continue to enforce DOMA; however,

(3) this presented the "rare case" in which the Department of Justice should decline to defend the statute.

The government, pursuant to this Presidential position, did not oppose the McLaughlin Group's suit on the merits.

At the parties' request, the district court stayed the case in light of two other similar challenges that were then on appeal before the First Circuit. This court held Section 3 of DOMA invalid on May 31, 2012. See Massachusetts v. U.S. Dep't of Health & Human Servs., 682 F.3d 1 (1st Cir. 2012). The district court continued the stay, over the McLaughlin Group's objection, following this court's decision in that case, id. at 17, to withhold issuance of a mandate in deference to anticipated DOMA challenges before the Supreme Court.

On June 26, 2013, the Supreme Court held Section 3 unconstitutional as a violation of the Fifth Amendment. See United States v. Windsor, 133 S. Ct. 2675, 2695-96 (2013).

The district court resumed proceedings in this case, entering judgment in favor of the McLaughlin Group on October 2, 2013. The district court did not address costs at that time.

On October 28, 2013, the McLaughlin Group moved for fees and costs under the EAJA. The district court denied the McLaughlin

Group's motion, finding that the government's position was substantially justified. The district court reasoned:

> To answer this question, the court need go no further than the Windsor decision itself. As the High Court recognized, the approach taken by the President of preserving the justiciability of Section 3 of DOMA by continuing to enforce it despite a personal belief that the statute was unconstitutional, paid the appropriate respect to the primacy of the Supreme Court in matters of constitutional interpretation.

McLaughlin v. Hagel, 987 F. Supp. 2d 132, 134 (D. Mass. 2013). The court added that the relevant question was not whether the President could have ended enforcement of Section 3, but whether it would have been "constitutionally reasonable" under the circumstances, concluding that "[i]t is clear from Windsor that the Supreme Court would have thought not." Id.

## II.

A district court's determination of whether the government's position[2] was "substantially justified," and so

---

[2] "Defining the concept of the Government's 'position' -- at least with any precision -- has proved . . . elusive." See Saysana v. Gillen, 614 F.3d 1, 5 (1st Cir. 2010). The statute itself offers little guidance, stating simply that a court shall award fees "unless the court finds that the position of the United States was substantially justified." 28 U.S.C. § 2412(d)(1)(A). It adds that the "'position of the United States' means, in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based . . . ." 28 U.S.C. § 2412(d)(2)(D). The district court described the government's position as "its litigating position that, in deference to Congress, it would continue to enforce Section 3 of DOMA until the courts (or Congress itself) had definitively spoken, while in the interim conceding the

whether to award attorney's fees under EAJA, is reviewed for abuse of discretion.  See Pierce v. Underwood, 487 U.S. 552, 562-63 (1988).  Legal determinations made in finding a position substantially justified are reviewed de novo.  See Aronov, 562 F.3d at 88.

A denial of costs is reviewed for abuse of discretion. B. Fernández, 516 F.3d at 28.

### III.

Under the EAJA, "a court shall award to a prevailing party other than the United States fees and other expenses . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust."  28 U.S.C. § 2412(d)(1)(A).  The burden is on the United States to make those showings.  See Saysana v. Gillen, 614 F.3d 1, 5 (1st Cir. 2010).  Because we agree with the district court that the position of the United States was substantially justified, we do not reach the question of special circumstances.

---

unconstitutionality of Section 3."  McLaughlin, 987 F. Supp. 2d at 134.  By contrast, the McLaughlin Group variously describes the government's position as "the government's defense of its unlawful conduct on the merits," and "the government's conduct in knowingly and purposefully violating the Plaintiffs' constitutional rights, and then forcing them to litigate a case the government would not defend on the merits."  These characterizations are narrower than the district court's in that they emphasize the government's refusal to defend Section 3 -- and so too its "unlawful conduct" -- but exclude constitutional considerations for continued enforcement pending judicial review.

A "position" of the United States is "substantially justified" if it is "justified to a degree that could satisfy a reasonable person" -- that is, if the position has a "reasonable basis both in law and fact." <u>Pierce</u>, 487 U.S. at 565. If the government "reasonably believes the action or inaction is required by law, then, by definition it cannot be the basis for an award of EAJA fees." <u>Aronov</u>, 562 F.3d at 94 (citing <u>Dantran, Inc.</u> v. <u>U.S. Dep't of Labor</u>, 246 F.3d 36, 41 (1st Cir. 2001)) (holding government was substantially justified as a matter of law). Both the government's pre-litigation and litigation positions are evaluated holistically in making this determination. <u>See</u> <u>Saysana</u>, 614 F.3d at 5.

This extraordinary case presents the unusual situation in which the government's pre-litigation and during-litigation position was to enforce a challenged statute, but in which the government's litigation position was to argue that the challenged statute is unconstitutional. The McLaughlin Group makes a twofold argument: the government pursued pre-litigation actions that it believed violated the McLaughlin Group's constitutional rights, and the government's litigation position agreed with the McLaughlin Group in denying that the opposite position, defense of the statute, had any merit.

The McLaughlin Group attempts to divorce the government's position from the practical constitutional difficulty the

government faced.  The President and the Department of Justice concluded unilaterally both that heightened scrutiny was the appropriate standard of review -- contrary to "substantial circuit authority" -- and that there was no reasonable argument consistent with that standard available in defense of Section 3.  The government then "face[d] a difficult choice": either enforce (but decline to defend) a statute it believed unconstitutional, or decline to enforce the statute under a novel legal theory while simultaneously precluding judicial review of that novel theory.  See Windsor, 133 S. Ct. at 2688-89.  The district court appreciated this difficulty, and found that, under the Supreme Court's decision in Windsor, the government's enforce-but-not-defend position was substantially justified.[3]

In Windsor, the Court observed that the alternative to finding justiciability would be to find that the government's refusal to defend Section 3 precluded judicial review.  Id. at 2688.  The Court reasoned that this alternative was unacceptable because it "would undermine the clear dictate of the separation-of-powers principle that when an Act of Congress is alleged to conflict with the Constitution, [i]t is emphatically the province and duty of the judicial department to say what the law

---

[3]  The McLaughlin Group's argument that Windsor's finding of justiciability is not the same as finding that a position is "substantially justified" misses the mark.  The district court relied on the Windsor Court's reasoning, not the finding itself.

is." Id. (quoting Zivotofsky v. Clinton, 132 S. Ct. 1421, 1427-28 (2012) (quoting Marbury v. Madison, 5 U.S. (1 Cranch) 137, 177 (1803))) (internal quotation marks omitted). The district court found that this dilemma provided a reasonable basis for the government's position. We agree. First, had the government not continued to enforce Section 3, it would have precluded judicial review of a controversial conclusion regarding the statute's validity. Second, had it not continued to enforce Section 3, the government would also have posed a second "grave challenge[]" to separation of powers by effectively "nullify[ing] Congress' enactment solely on its own initiative and without any determination from the Court." Id.

This practical difficulty highlights the conceptual difficulty in identifying the government's position: The McLaughlin Group urges that the government's "litigation position" was the narrow position that Section 3 -- and so too its pre- and during-litigation conduct of enforcing Section 3 -- is unconstitutional. But the district court understood the government's position to be the broader, nuanced position that the government represented itself as taking, namely, that it enforced the statute to permit judicial review of its novel legal theory in deference to the other branches.

We agree with the district court that the government's position is the broader one and must be "assessed in its totality."

See Saysana, 614 F.3d at 5, 7. Contrary to what the McLaughlin Group argues, the district court did not improperly look to "non-merits based justifications." Rather, the lower court properly focused on the constitutional difficulties faced by the government.

Our en banc decision in Aronov v. Napolitano, 562 F.3d 84 (1st Cir. 2009) (en banc), held that a denial of fees is correct as a matter of law where the government reasonably believes its actions are legally required. Id. at 94. Here, the district court correctly found that the government reasonably believed its actions, whether or not required,[4] were appropriate given "the Executive's obligation" to faithfully execute the laws. See Letter from Eric H. Holder, Jr., Att'y Gen., U.S. Dep't of Justice, to John A. Boehner, Speaker, U.S. House of Representatives (Feb. 23, 2011) (emphasis added) (explaining the government's decision to enforce but not defend Section 3 of DOMA). Similarly, we agree with the district court's conclusion that the Supreme Court would not have found "constitutionally reasonable" the opposite course of action, urged by the McLaughlin Group, of refusing to enforce Section 3. See McLaughlin, 987 F. Supp. 2d at 134. Because the government reasonably believed its actions were the most

_____

[4] While the government made clear it believed the President could have lawfully chosen to end enforcement of Section 3, see McLaughlin, 987 F. Supp. 2d at 134, we believe the reasoning behind Aronov is still applicable to the unique facts of this case given the uncertainty of that position in light of the acknowledged separation-of-powers concerns, see Windsor, 133 S. Ct. at 2688.

-10-

constitutionally appropriate available, its actions were "by definition" substantially justified.  See Aronov, 562 F.3d at 94. We find the denial of fees correct as a matter of law.  See id.

The McLaughlin Group's argument that this is erroneous under different First Circuit precedent is unavailing.  They argue that in Sierra Club v. Sec'y of the Army, 820 F.2d 513, 519-20 (1st Cir. 1987), the First Circuit held that if the government subjectively believes that its actions are unlawful, then its decision to take those actions cannot be substantially justified. This stretches the precedent.  Sierra Club does not make the government's subjective belief dispositive.  The court observed, first, that this was one among many considerations counseling against the position's justification, and, second, that during the EAJA phase of litigation, the government "chose not to . . . argu[e] that their position turned on some close or unsettled question of law."  Id. at 520.  This differs from the present case where the government had at least two strong separation-of-powers reasons for its actions and argues that the constitutionality of its pre-litigation action -- not merely the statute's constitutionality, but also the constitutionally appropriate action in this unusual situation -- turned on a close question of law. See also United States v. Marolf, 277 F.3d 1156, 1162 (9th Cir. 2002) (quoting TKB Int'l, Inc. v. United States, 995 F.2d 1460, 1468 (9th Cir. 1993)).

The McLaughlin Group correctly argues the law should not encourage government abuse by condoning a "knowing" rights violation, and that there is the need to provide incentives for litigation of rights violations.  But that is not this case, which was "not routine."  _Windsor_, 133 S. Ct. at 2689.  This is an extraordinary case in which the government "face[d] a difficult choice."  _Id._; _see also_ _Pierce_, 487 U.S. at 562 (holding that whether the government's position is "substantially justified" is reviewed for abuse of discretion to provide "needed flexibility").  Moreover, while the President and the executive branch may have thought Section 3 of DOMA was unconstitutional, the House of Representatives strongly disagreed.  The President may have ultimately been correct, but until the Supreme Court resolved the issue in _Windsor_, it is hard to see how the enforcement of Section 3 was a "knowing" rights violation.

Finally, the McLaughlin Group, relying on _Pierce_, 487 U.S. at 560, urges that the government's litigation position could not have been substantially justified because the government has not argued for the "opposite merits determination."  But _Pierce_ does not "require" that the government "urg[e] . . . the opposite merits determination."  Rather, the quoted passage explains why the appropriate standard of review is the "deferential,

abuse-of-discretion review."  See id.[5]  First Circuit precedent does not suggest otherwise.  See, e.g., Castañeda-Castillo v. Holder, 723 F.3d 48, 73 (1st Cir. 2013) (recognizing that, at least on appeal, advancing only procedural arguments might be substantially justified); Aronov, 562 F.3d at 87, 89-93 (permitting immediate settlement without exposure to fees).  Though novel, the government's litigate-to-lose position is not barred by the case law.  And because it was constitutionally appropriate, fees were correctly denied as a matter of law.  See Aronov, 562 F.3d at 94.

## IV.

The McLaughlin Group also contends that, even if not entitled to fees, the "district court erred as a matter of law by applying the 'substantially justified' test to [the McLaughlin Group's] claim for [$350 in] costs" under 28 U.S.C. § 2412(a)(1) and Fed. R. Civ. P. 54(d).  As the government concedes, this would be an error of law if that were what happened.  But the district court did not improperly apply the standard.  It merely declined to address costs separately.

Under other circumstances, this silence could be a problem.  "There is a background presumption favoring cost recovery

---

[5]  Pierce frames the relevant inquiry as "determin[ing] whether urging of the opposite merits determination was substantially justified."  Pierce, 487 U.S. at 560 (emphasis added).  That this framing does not describe this case is not surprising because the government's litigation position is unusual.  See Windsor, 133 S. Ct. at 2689.

-13-

for prevailing parties," and so "[w]hen denying costs, a district court must offer an explanation for doing so unless the basis for denying costs is 'readily apparent on the face of the record.'" B. Fernández, 516 F.3d at 28 (quoting San Juan Dupont Plaza Hotel, 994 F.2d at 963). Here, the basis for denying costs was readily apparent: as we have thoroughly detailed above, the case was "close and difficult," and "required considered balancing." See id. While an explanation would have avoided any confusion about the district court's reasoning, we find that the district court's unexplained decision to deny costs was not an abuse of discretion.

V.

We affirm. Costs are assessed against the McLaughlin Group.