# United States Court of Appeals
## For the First Circuit

No. 22-1465

BARBARA MICHEL; KARINE G. PIERRE BOUCICAUT; ANA MARISELA
DIAZ SANCHEZ; JOSE ANGEL ANDRADE; FREDY FRANCISCO FUENTES;
OSCAR OSMIN CHAVEZ-DERAS,

Plaintiffs, Appellants,

v.

ALEJANDRO MAYORKAS, in his official capacity as Secretary of
Homeland Security; UNITED STATES DEPARTMENT OF HOMELAND
SECURITY; UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES;
MICHAEL J. MCCLEARY, in his official capacity as Field Director
of the United States Citizenship and Immigration Services,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Indira Talwani, U.S. District Judge]

Before

Barron, Chief Judge,
Lynch and Gelpí, Circuit Judges.

Anthony Drago, Jr., with whom Anthony Drago, Jr., P.C. was on
brief, for appellants.
Mary L. Larakers, Trial Attorney, Office of Immigration
Litigation, with whom Brian M. Boynton, Principal Deputy Assistant
Attorney General, Civil Division, William C. Peachey, Assistant
Director, and Monique T. Peoples, Senior Litigation Counsel, were
on brief, for appellees.

May 11, 2023

**GELPÍ**, **Circuit Judge**.  The Equal Access to Justice Act ("EAJA") entitles a prevailing party in certain civil actions against the United States to receive attorney's fees, unless the government's position was substantially justified or special circumstances make an award unjust.  28 U.S.C. § 2412(d)(1); see also McLaughlin v. Hagel, 767 F.3d 113, 117 (1st Cir. 2014).

Barbara Michel, Karine G. Pierre Boucicaut, Ana Marisela Díaz Sánchez, José Angel Andrade, Fredy Francisco Fuentes, and Oscar Osmin Chávez-Deras (collectively, "Appellants") prevailed before the district court in a challenge against the Department of Homeland Security ("DHS") and its agency, the United States Citizenship and Immigration Services ("USCIS") (collectively, the "government" or "Appellees"), after USCIS administratively closed each individual's application to adjust status.  Appellants subsequently filed a motion for attorney's fees under the EAJA.  The district court determined that although Appellants had prevailed in their challenge to USCIS' action, the government's position was substantially justified.  The district court therefore denied them attorney's fees for the proceedings before it.  However, the district court granted Appellants EAJA fees for the ensuing appellate proceedings, which were voluntarily dismissed by the government.  This award nonetheless amounted to a reduced percentage of the global sum sought based on a finding

that the total hours billed were duplicative.  We affirm both rulings.

## I. Background

Although Appellants' underlying challenge has been resolved in their favor and is no longer at issue, we describe the dispute for context.  Appellants are citizens of Haiti and El Salvador who were granted Temporary Protected Status ("TPS") after previously being in removal proceedings in the United States.  TPS constitutes a temporary permission to remain in the United States and is granted to certain noncitizens whose country of origin meets the statutory conditions outlined in 8 U.S.C. § 1254a.  Upon obtaining this status, each Appellant filed an application with USCIS for "advance parole" to travel to his or her country of citizenship and be allowed entry to the United States upon returning.

USCIS, in fact, authorized their travel.  Upon Appellants' return, they were "inspected and paroled" into the United States.  They then filed an application to adjust their immigration statuses from TPS to Lawful Permanent Resident.  However, USCIS administratively closed their applications for lack of jurisdiction, concluding that the immigration judge, not USCIS, had sole jurisdiction over their applications because they were not "arriving aliens" under the Miscellaneous and Technical Immigration and Naturalization Amendments of 1991 ("MTINA"), Pub.

- 4 -

L. No. 102-232, § 304(c), 105 Stat. 1733, 1749 (1991), despite having been "inspected and paroled."[1]

Appellants proceeded to file individual complaints in the United States District Court for the District of Massachusetts under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, et seq., challenging USCIS' refusal to entertain jurisdiction over their adjustment of status applications. Each complaint presented the same legal issue: whether travel on advance parole rendered Appellants "arriving aliens" such that USCIS, rather than the immigration judge, had jurisdiction over their applications to adjust status. The cases were consolidated by the district court as they involved identical issues. The government moved to dismiss the six complaints, on the ground that the district court did not have jurisdiction to hear the claims under 8 U.S.C. § 1252(g) as Appellants sought to indirectly challenge their removal orders. Alternatively, the government posited that Appellants were not

---

[1] Regulations promulgated by DHS provide that jurisdiction over adjustment of status applications lies with USCIS, 8 C.F.R § 245.2(a)(1), unless the immigration judge has jurisdiction under 8 C.F.R § 1245.2(a)(1)(i). Sections 1245.2(a)(1)(i) and (ii) provide that an immigration judge has sole jurisdiction over adjustment of status applications for those in removal proceedings "other than" "arriving aliens" unless certain conditions are met. Accordingly, whether USCIS could adjudicate Appellants' applications turns in part on whether they are "arriving aliens" not subject to certain conditions. "Arriving Alien," as defined by regulation, includes noncitizens who apply for admission "coming or attempting to come into the United States at a port-of-entry." 8 C.F.R. § 1.2.

"arriving aliens" under the MTINA. Appellants filed a cross motion for judgment on the pleadings. On March 2, 2021, the district court denied the government's motion to dismiss and granted Appellants' cross motion for judgment on the pleadings, ruling that USCIS had jurisdiction and ordering the agency to reopen the applications and adjudicate them on the merits.

The government timely appealed each of the six cases to this court, where the same were also consolidated. Prior to any briefing, the government voluntarily dismissed its appeal. Subsequently, Appellants filed timely motions before the district court requesting attorney's fees under the EAJA for both district and appellate court proceedings. The district court held that the government's position throughout the district court litigation was substantially justified and denied EAJA fees for the same. The district court, however, found no justification for the government's appeal and thus granted EAJA fees for the short-lived appellate proceedings, but at a fraction of the requested sum upon a finding that the total number of hours billed included duplicate listings.

Appellants challenge the district court's EAJA rulings for both the district court and appellate proceedings and seek an award of $179,480 for district court work and a total award of $12,663.92 for appellate work.

## II. Standard of Review

"We review a district court's determinations under the EAJA for abuse of discretion." Aronov v. Napolitano, 562 F.3d 84, 88 (1st Cir. 2009). We will find an abuse of discretion "when a material factor deserving significant weight is ignored, when an improper factor was relied upon, or when all proper and no improper factors are assessed, but the [district] court makes a serious mistake in weighing them." Casa Marie Hogar Geriatrico, Inc. v. Rivera-Santos, 38 F.3d 615, 618 (1st Cir. 1994) (quoting Foster v. Mydas Assoc., Inc., 943 F.2d 139, 143 (1st Cir. 1991)).

## III. Discussion

As a general principle, each party before the court is usually responsible for its own attorney's fees. See Castañeda-Castillo v. Holder, 723 F.3d 48, 56 (1st Cir. 2013). The EAJA is an exception to this traditional "American rule." See Aronov, 562 F.3d at 88; 28 U.S.C. § 2412. The EAJA provides in pertinent part that:

> a court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A) (emphasis added). The statute's purpose is "to ensure that certain individuals . . . will not be deterred from seeking review of, or defending against, unjustified governmental action because of the expense involved." Aronov, 562 F.3d at 88 (omission in original) (quoting Scarborough v. Principi, 541 U.S. 401, 407 (2004)). Not only is the EAJA a fee shifting statute, but it is also a waiver of the government's sovereign immunity "and so must be construed strictly in favor of the government." Id.

Here, there is no dispute that Appellants prevailed. Hence, the issue at bar is whether the government was "substantially justified" in the underlying litigation, which the government must establish by a preponderance of the evidence. Saysana v. Gillen, 614 F.3d 1, 5 (1st Cir. 2010).

We have held that the government is "substantially justified" if "it has a reasonable basis in law and fact" for its position, Aronov, 562 F.3d at 94 (quoting Pierce v. Underwood, 487 U.S. 552, 566 n.2 (1988)), or put another way, if "a reasonable person could think [the government's position] correct," Dantran, Inc. v. U.S. Dep't of Lab., 246 F.3d 36, 41 (1st Cir. 2001) (quoting Pierce, 487 U.S. at 566 n.2). "To be 'substantially justified,' it is not necessary for the [g]overnment's position to be 'justified to a high degree'; rather, the [g]overnment meets this standard if its position is 'justified in substance or in the

main.'" Saysana, 614 F.3d at 5 (quoting Pierce, 487 U.S. at 565).

Further, even if the government failed on the merits, its position could still have been substantially justified. See id.; Aronov, 562 F.3d at 94. When the issue is a novel one with little to no precedent, courts have been hesitant to find the government's position not substantially justified. Saysana, 614 F.3d at 6; Schock v. United States, 254 F.3d 1, 5-6 (1st Cir. 2001) (outlining certain factors courts may consider when evaluating the government's position). Finally, "in evaluating the [g]overnment's position, we must 'arrive at one conclusion that simultaneously encompasses and accommodates the entire civil action.'" Saysana, 614 F.3d at 5 (quoting Dantran, 246 F.3d at 41).

We now turn to the question before us: whether the district court abused its discretion in finding the government's position substantially justified.[2] We evaluate the government's pre-litigation and litigation positions holistically. Id.

Appellants argue that the government's position was not substantially justified because it departed from decades of prior

---

[2] As outlined above, the EAJA provides that a court shall award fees to a prevailing party unless "the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). Because we agree with the district court that the government's position was substantially justified, we need not reach whether special circumstances were present here. McLaughlin, 767 F.3d at 117.

interpretation and had no basis in law of fact.  They further posit that the government's attempt to justify a "fabricated legal theory" during the litigation stage was "absurd."  The government, on the other hand, contends that the arguments it presented before the district court were novel, based on the plain language of the MTINA, supported by recent court decisions dating back to 2014, and had never been addressed by the First Circuit, and that the overwhelming number of decisions from other courts adopting its position support the denial of EAJA fees.

## 1. District Court Proceedings

The district court identified two reasons for concluding that the government was substantially justified.  First, the legal arguments raised were novel and have not yet been addressed by the First Circuit.  Second, it observed that, although it disagreed with the government's position, that position was previously upheld by other federal courts, including one within the District of Massachusetts.  In sum, the district court found that the government had presented a substantial question of law.  Because it assessed the factors in Schock and weighed them appropriately, we conclude it did not abuse its discretion in denying Appellants attorney's fees for the proceedings before it.

An award of EAJA fees foremost was not warranted in this instance given that the issue before the district court was novel and of first impression within the First Circuit.  When the

- 10 -

district court addressed whether travel on advance parole rendered Appellants "arriving aliens," such that USCIS would have jurisdiction over Appellants' applications to adjust status, caselaw was scant. Moreover, as Appellants' counsel admitted to the district court, not a single case in the country had been issued favoring their arguments. When an issue before the court is novel and has little to no precedent, "courts have found that an award of EAJA fees is not warranted." Saysana, 614 F.3d at 6. Whether travel on advance parole rendered Appellants arriving aliens was then and remains an issue of first impression in this circuit.[3] As such, "it was appropriate for the government to seek specific instruction from the [district] court on th[is] issue[]." Id. (second and third alterations in the original) (quoting De Allende v. Baker, 891 F.2d 7, 13 (1st Cir. 1989)). Moreover, the only district court within the First Circuit to address the key issue agreed that the government's position on the merits is correct. See Pineda v. Wolf, No. 19-11201, 2020 WL 4559936, at *1 (D. Mass. May 13, 2020).

Moreover, the district court did not abuse its discretion in denying fees since "a string of court decisions going either way" can indicate that the government's position is substantially justified. Schock, 254 F.3d at 6. And that was

---

[3] We have yet to address the merits of this issue, and do not do so now.

- 11 -

precisely the case here where a number of courts have issued reasoned opinions agreeing with the government. For instance, the Fifth Circuit recently addressed -- before the district court here denied fees -- the underlying issue in a case mirroring this one and held that the Appellants in that case, who returned from foreign travel, were not "arriving aliens" when they submitted their applications for adjustment of status and thus that USCIS lacked jurisdiction over said applications. Duarte v. Mayorkas, 27 F.4th 1044, 1057-1061 (5th Cir. 2022). Similarly, another court within the District of Massachusetts had previously held that the plaintiff in that case was not an "arriving alien" after he traveled outside the United States on advance parole and was inspected upon return. Pineda, 2020 WL 4559936, at *1. Likewise, a court in the District of Columbia held that the petitioner did not meet the definition of "arriving alien" after traveling on advance parole and returning to the United States and thus that USCIS could not adjudicate his application to adjust status. Barrera v. U.S. Dep't of Homeland Sec., No. 20-cv-02395, 2022 WL 103307, at *1, *3 (D.D.C. Jan. 11, 2022). This jurisprudence makes it clear that the government's position was, and continues to be, substantially justified.

Appellants posit that the fact that other courts reached different conclusions based on the same facts "does not justify the illogical legal position taken by the government." We are

unpersuaded. On the contrary, the fact that the issue here has been decided in the government's favor by several courts indicates that there is uncertainty on whether TPS holders traveling on advance parole can be classified as "arriving aliens" upon reentry to the country.

The fact that the government's claims failed on the merits does not dispose of the issue of substantial justification. Schock, 254 F.3d at 5. The government's position, when viewed holistically, was indeed justified. Thus, we discern no abuse of discretion in the denial of EAJA fees related to the challenge before the district court.

## 2. Appellate Proceedings

We now turn to Appellants' remaining challenge. The district court granted Appellants an EAJA award for the appellate proceedings abandoned by the government. Appellants argue, however, that the district court erred in its calculation of the award as it drastically reduced the same to $4,228 from the $28,450 sought.[4] The district court justified the reduction based on incongruities between the number of hours billed and the duplicate work done across the six identical appeals. Appellants argue that the district court should have awarded them a higher sum and in

---

[4] The district court also set an hourly rate of $226.34 per hour for Appellants' attorney's legal work (the same attorney worked on the six appeals). The adjusted hourly rate set by the district court is not being contested.

fact erred in calculating the time their attorney spent on each one of the six appeals, which they argue was not duplicative and essential for each. We again review for abuse of discretion. McLaughlin, 767 F.3d at 117.

District courts have considerable leeway in selecting fair and reasonable attorney's fees particularly when the district court "has presided over [the] case from its inception" and has had the opportunity to evaluate the attorney's diligence and expertise firsthand. Pérez-Sosa v. Garland, 22 F.4th 312, 326 (1st Cir. 2022). An attorney's statement must support the fees requested and it is within the district court's broad discretion to "separat[e] wheat from chaff." Torres-Rivera v. O'Neill-Cancel, 524 F.3d 331, 340 (1st Cir. 2008). Nothing in the record urges us to find that the district court abused its discretion in the reduction at issue here.

Appellants suggest that since counsel is a solo practitioner who lacks the staffing the government has, the "performance of multiple tasks is necessary for survival" in order to "properly manage six . . . separate files." That may be so, but we see no abuse of discretion in the district court's reduction of the award of attorney's fees. Here, for example, the same counsel represented all six Appellants on appeal, with each one of the six appeals having the same notice of appeal, yet billed 4.8

hours total -- that is, almost an hour for each -- to review the government's almost identical notices of appeal.

The district court meticulously explained its decision to reduce the time entries and to shrink the overall fees related to the government's appeal on the ground that Appellants failed to prove the reasonableness of the hours claimed. Torres-Rivera, 524 F.3d at 340. Where the district court could not distinguish unreasonably duplicated fees from others that had been reasonably incurred in each case, it limited the fee award to the time spent by counsel on the lead case and the separate phone calls to each Appellant. The district court, thus, did not abuse its discretion in determining whether the hours were redundant and/or excessive.

**IV. Conclusion**

We affirm.